## PERETZ v. UNITED STATES

No. 90–615.   Argued April 23, 1991—Decided June 27, 1991

*Joel B. Rudin* argued the cause for petitioner. With him on the briefs were *Richard W. Levitt* and *Joel Brenner*.

*Deputy Solicitor General Bryson* argued the cause for the United States. With him on the brief were *Solicitor General Starr, Assistant Attorney General Mueller, Michael R. Lazerwitz,* and *Joseph Douglas Wilson*.

JUSTICE STEVENS delivered the opinion of the Court.

The Federal Magistrates Act grants district courts authority to assign magistrates certain described functions as well as "such additional duties as are not inconsistent with the Constitution and laws of the United States."[1] In *Gomez* v. *United States,* 490 U. S. 858 (1989), we held that those "additional duties" do not encompass the selection of a jury in a

---

[1] Pub. L. 90–578, 82 Stat. 1108, as amended, 28 U. S. C. § 636(b)(3).

felony trial without the defendant's consent. In this case, we consider whether the defendant's consent warrants a different result.

I

Petitioner and a codefendant were charged with importing four kilograms of heroin. At a pretrial conference attended by both petitioner and his counsel, the District Judge asked if there was "[a]ny objection to picking the jury before a magistrate?" App. 2. Petitioner's counsel responded: "I would love the opportunity." *Ibid.* Immediately before the jury selection commenced, the Magistrate asked for, and received, assurances from counsel for petitioner and from counsel for his codefendant that she had their clients' consent to proceed with the jury selection.[2] She then proceeded to conduct the *voir dire* and to supervise the selection of the jury. Neither defendant asked the District Court to review any ruling made by the Magistrate.

The District Judge presided at the jury trial, which resulted in the conviction of petitioner and the acquittal of his codefendant. In the District Court, petitioner raised no objection to the fact that the Magistrate had conducted the *voir dire*. On appeal, however, he contended that it was error to assign the jury selection to the Magistrate and that our decision in *Gomez* required reversal. The Court of Appeals disagreed. Relying on its earlier decision in *United States* v. *Musacchia*, 900 F. 2d 493 (CA2 1990), it held "that explicit consent by a defendant to magistrate-supervised *voir dire* waives any subsequent challenge on those grounds," and affirmed petitioner's conviction. App. to Pet. for Cert. 2a; 904 F. 2d 34 (1990) (affirmance order).

---

[2] "THE COURT: Mr. Breitbart, I have the consent of your client to proceed with the jury selection?
"MR. BREITBART: Yes, your Honor.
"THE COURT: And Mr. Lopez, do I have the consent of your client to proceed?
"MR. LOPEZ: Yes, your Honor." App. 5.

In *Musacchia,* the Second Circuit had affirmed a conviction in a case in which the defendant had not objected to jury selection by the Magistrate. The Court of Appeals concluded that our holding in *Gomez* applied only to cases in which the magistrate had acted without the defendant's consent. The court explained:

"Appellants additionally claim that *Gomez* states that a magistrate is without jurisdiction under the Federal Magistrates Act to conduct *voir dire.* We disagree. Since *Gomez* was decided we and other circuits have focused on the 'without defendant's consent' language and generally ruled that where there is either consent or a failure to object a magistrate may conduct the jury *voir dire* in a felony case. *See [United States* v. *Vanwort,* 887 F. 2d 375, 382–383 (CA2 1989), cert. denied *sub nom. Chapoteau* v. *United States,* 495 U. S. 906 (1990); *United States* v. *Mang Sun Wong,* 884 F. 2d 1537, 1544 (CA2 1989), cert. denied, 493 U. S. 1082 (1990); *United States* v. *Lopez-Pena,* 912 F. 2d 1542, 1545–1548 (CA1 1989)]* (not plain error to permit magistrate to preside since objection to magistrate must be raised or it is waived); *Government of the Virgin Islands* v. *Williams,* 892 F. 2d 305, 310 (3d Cir. 1989) (absent demand no constitutional difficulty under § 636(b)(3) with delegating jury selection to magistrate); *United States* v. *Ford,* 824 F. 2d 1430, 1438–39 (5th Cir. 1987) *(en banc)* (harmless error for magistrate to conduct *voir dire* where defendant failed to object), *cert. denied,* 484 U. S. 1034 . . . (1988); *United States* v. *Wey,* 895 F. 2d 429 (7th Cir. 1990) (jury selection by magistrate is not plain error where no prejudice is shown). Concededly, *[United States* v. *France,* 886 F. 2d 223 (CA9 1989),] concluded otherwise. The court there ruled that defendant's failure to contemporaneously object to the magistrate conducting jury selection did not waive her right to appel-

late review. 886 F. 2d at 226. But that holding may be explained, as noted earlier, by what the court perceived as the futility of defendant raising an objection below." 900 F. 2d, at 502.

The conflict among the Circuits described by the Court of Appeals prompted us to grant the Government's petition for certiorari in the *France* case, see *United States* v. *France*, 495 U. S. 903 (1990). Earlier this Term, we affirmed that judgment by an equally divided Court, *United States* v. *France*, 498 U. S. 335 (1991). Thereafter, we granted certiorari in this case and directed the parties to address the following three questions:

"1. Does 28 U. S. C. § 636 permit a magistrate to conduct the *voir dire* in a felony trial if the defendant consents?

"2. If 28 U. S. C. § 636 permits a magistrate to conduct a felony trial *voir dire* provided that the defendant consents, is the statute consistent with Article III?

"3. If the magistrate's supervision of the *voir dire* in petitioner's trial was error, did the conduct of petitioner and his attorney constitute a waiver of the right to raise this error on appeal?" See 498 U. S. 1066 (1991).

Resolution of these questions must begin with a review of our decision in *Gomez*.

## II

Our holding in *Gomez* was narrow. We framed the question presented as "whether presiding at the selection of a jury in a felony trial *without the defendant's consent* is among those 'additional duties'" that district courts may assign to magistrates. 490 U. S., at 860 (emphasis added). We held that a magistrate "exceeds his jurisdiction" by selecting a jury "despite the defendant's objection." *Id.*, at 876. Thus, our holding was carefully limited to the situation in which the

parties had not acquiesced at trial to the magistrate's role.[3] This particular question had divided the Courts of Appeals. See *id.*, at 861–862, and n. 7. On the other hand, those courts had uniformly rejected challenges to a magistrate's authority to conduct the *voir dire* when no objection to his performance of the duty had been raised in the trial court.[4]

Although we concluded that the role assumed by the Magistrate in *Gomez* was beyond his authority under the Act, we recognized that Congress intended magistrates to play an integral and important role in the federal judicial system. See *id.*, at 864–869 (citing H. R. Rep. No. 96–287, p. 5 (1979)). Our recent decisions have continued to acknowledge the importance Congress placed on the magistrate's role. See, *e. g., McCarthy* v. *Bronson*, 500 U. S. 136, 142 (1991). "Given the bloated dockets that district courts have now come to expect as ordinary, the role of the magistrate in today's federal judicial system is nothing less than indispensable." *Government of the Virgin Islands* v. *Williams*, 892 F. 2d 305, 308 (CA3 1989).[5]

---

[3] As the Third Circuit has recognized:

"The Court did not, however, reach the question presented in this case: whether the Federal Magistrates Act permits a magistrate to preside over the selection of a jury when a defendant consents. In *Gomez*, the Court framed the issue as 'whether presiding at the selection of a jury in a felony trial *without the defendant's consent*' is an additional duty within the meaning of the Federal Magistrates Act. [490 U. S., at 860] (emphasis added); *see also id.* at [876] (rejecting the government's harmless error analysis on the grounds that it 'does not apply in a felony case in which, *despite the defendant's objection* and without any meaningful review by a district judge, an officer exceeds his jurisdiction by selecting a jury'). *Gomez* thus left open the question whether a defendant's consent makes a difference as to whether a district court may assign voir dire to a magistrate." *Government of the Virgin Islands* v. *Williams*, 892 F. 2d 305, 308–309 (1989).

[4] See, *e. g., United States* v. *Ford*, 824 F. 2d 1430 (CA5 1987) (en banc), cert. denied, 484 U. S. 1034 (1988); *United States* v. *DeFiore*, 720 F. 2d 757 (CA2 1983), cert. denied *sub nom. Coppola* v. *United States*, 466 U. S. 906 (1984); *United States* v. *Rivera-Sola*, 713 F. 2d 866 (CA1 1983); *Haith* v. *United States*, 342 F. 2d 158 (CA3 1965).

[5] "It can hardly be denied that the system created by the Federal Magistrates Act has exceeded the highest expectations of the legislators who

Cognizant of the importance of magistrates to an efficient federal court system, we were nonetheless propelled towards our holding in *Gomez* by several considerations. Chief among our concerns was this Court's "settled policy to avoid an interpretation of a federal statute that engenders constitutional issues." *Gomez*, 490 U. S., at 864. This policy was implicated in *Gomez* because of the substantial question whether a defendant has a constitutional right to demand that an Article III judge preside at every critical stage of a felony trial.[6] The principle of constitutional avoidance led

conceived it. In modern federal practice, federal magistrates account for a staggering volume of judicial work. In 1987, for example, magistrates presided over nearly half a million judicial proceedings. *See* S. Rep. No. 100–293, 100th Cong., 2d Sess. 7, *reprinted in* 1988 U. S. Code Cong. & Admin. News 5564. As a recent State Report noted, '[i]n particular, magistrates [in 1987] conducted over 134,000 preliminary proceedings in felony cases; handled more than 197,000 references of civil and criminal pretrial matters; reviewed more than 6,500 social security appeals and more than 27,000 prisoner filings; and tried more than 95,000 misdemeanors and 4,900 civil cases on consent of the parties. *Id.* at 5565." *Government of the Virgin Islands* v. *Williams*, 892 F. 2d, at 308.

[6] In *Gomez*, we cited our opinion in *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833 (1986), which emphasized the importance of the personal right to an Article III adjudicator:

"Article III, § 1, serves both to protect 'the role of the independent judiciary within the constitutional scheme of tripartite government.' *Thomas* v. *Union Carbide Agricultural Products Co.*, 473 U. S. 568, 583 (1985), and to safeguard litigants' 'right to have claims decided before judges who are free from potential domination by other branches of government.' *United States* v. *Will*, 449 U. S. 200, 218 (1980). See also *Thomas, supra*, at 582–583; *Northern Pipeline*, 458 U. S., at 58. Although our cases have provided us with little occasion to discuss the nature or significance of this latter safeguard, our prior discussions of Article III, § 1's guarantee of an independent and impartial adjudication by the federal judiciary of matters within the judicial power of the United States intimated that this guarantee serves to protect primarily personal, rather than structural, interests. See, *e. g., id.*, at 90 (REHNQUIST, J., concurring in judgment) (noting lack of consent to non-Article III jurisdiction); *id.*, at 95 (WHITE, J., dissenting) (same). See also Currie, Bankruptcy Judges and the Independent Judiciary, 16 Creighton L. Rev. 441, 460, n. 108 (1983) (Article III, § 1, 'was designed as a protection for the parties from the risk of legislative or exec-

us to demand clear evidence that Congress actually intended to permit magistrates to take on a role that raised a substantial constitutional question. Cf. *Rust* v. *Sullivan*, 500 U. S. 173, 223 (O'CONNOR, J., dissenting). The requirement that Congress express its intent clearly was also appropriate because the Government was asking us in *Gomez* to construe a general grant of authority to authorize a procedure that deprived an individual of an important privilege, if not a right. See 2A C. Sands, Sutherland on Statutory Construction § 58.04, p. 715 (rev. 4th ed. 1984). The lack of an express provision for *de novo* review, coupled with the absence of any mention in the statute's text or legislative history of a magistrate's conducting *voir dire* without the parties' consent, convinced us that Congress had not clearly authorized the delegation involved in *Gomez*. In view of the constitutional issues involved, and the fact that broad language was being construed to deprive a defendant of a significant right or privilege, we considered the lack of a clear authorization dispositive. See *Gomez*, 490 U. S., at 872, and n. 25, 875–876.

Reinforcing this conclusion was the principle that "[a]ny additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties" that the statute assigned to magistrates.[7] Carefully reviewing the duties that magistrates

---

utive pressure on judicial decision'). Cf. *Crowell* v. *Benson*, [285 U. S. 22, 87 (1932)] (Brandeis, J., dissenting)." *Id.*, at 848.

[7] "The Federal Magistrates Act provides that a 'magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States.' 28 U. S. C. § 636(b)(3). Read literally and without reference to the context in which they appear, these words might encompass any assignment that is not explicitly prohibited by statute or by the Constitution. . . .

"When a statute creates an office to which it assigns specific duties, those duties outline the attributes of the office. Any additional duties performed pursuant to a general authorization in the statute reasonably should bear some relation to the specified duties. Thus in *United States*

were expressly authorized to perform, see *id.*, at 865–871, we focused on the fact that those specified duties that were comparable to jury selection in a felony trial could be performed only with the consent of the litigants.[8]   We noted that, in 1968 when magistrates were empowered to try "minor offenses," the exercise of that jurisdiction in any specific case was conditioned upon the defendant's express written consent.   See *id.*, at 866.   Similarly, the 1976 amendment provided that a magistrate could be designated as a special master in any civil case but only with the consent of the parties. *Id.*, at 867–868.   And in 1979, when Congress enlarged the magistrate's criminal jurisdiction to encompass all misdemeanors, the exercise of that authority was subject to the defendant's consent.   As we explained:

> "A critical limitation on this expanded jurisdiction is consent.   As amended in 1979, the Act states that 'neither the district judge nor the magistrate shall attempt to persuade or induce any party to consent to reference of any civil matter to a magistrate.'   93 Stat. 643, 28 U. S. C. § 636(c)(2).   In criminal cases, the Government may petition for trial before a district judge.   'Defendants charged with misdemeanors can refuse to consent to a magistrate and thus effect the same removal,' S. Rep. No. 96–74, p. 7 (1979), for the magistrate's criminal trial jurisdiction depends on the defendant's specific, written consent."   *Id.*, at 870–871 (footnote omitted).

v. *Raddatz*, 447 U. S. 667, 674–676 (1980); *Mathews* v. *Weber*, 423 U. S. 261 (1976); and *Wingo* v. *Wedding*, 418 U. S. 461 (1974), we interpreted the Federal Magistrates Act in light of its structure and purpose." *Gomez* v. *United States*, 490 U. S., at 863–864.

[8] The legislative history of the statute also emphasizes the crucial nature of the presence or absence of the litigants' consent.   See H. R. Rep. No. 96–287, p. 20 (1979) ("Because of the consent requirement, magistrates will be used only as the bench, bar, and litigants desire, only in cases where they are felt by all participants to be competent").

Because the specified duties that Congress authorized magistrates to perform without the consent of the parties were not comparable in importance to supervision of felony trial *voir dire* but were instead "subsidiary matters," *id.*, at 872, we did not waver from our conclusion that a magistrate cannot conduct *voir dire* over the defendant's objection.

## III

This case differs critically from *Gomez* because petitioner's counsel, rather than objecting to the Magistrate's role, affirmatively welcomed it. See *supra*, at 925. The considerations that led to our holding in *Gomez* do not lead to the conclusion that a magistrate's "additional duties" may not include supervision of jury selection when the defendant has consented.

Most notably, the defendant's consent significantly changes the constitutional analysis. As we explain in Part IV, *infra*, we have no trouble concluding that there is no Article III problem when a district court judge permits a magistrate to conduct *voir dire* in accordance with the defendant's consent. The absence of any constitutional difficulty removes one concern that motivated us in *Gomez* to require unambiguous evidence of Congress' intent to include jury selection among a magistrate's additional duties. Petitioner's consent also eliminates our concern that a general authorization should not lightly be read to deprive a defendant of any important privilege.

We therefore attach far less importance in this case to the fact that Congress did not focus on jury selection as a possible additional duty for magistrates. The generality of the category of "additional duties" indicates that Congress intended to give federal judges significant leeway to experiment with possible improvements in the efficiency of the judicial process that had not already been tried or even foreseen. If Congress had intended strictly to limit these additional duties to

functions considered in the committee hearings or debates, presumably it would have included in the statute a bill of particulars rather than a broad residuary clause. Construing this residuary clause absent concerns about raising a constitutional issue or depriving a defendant of an important right, we should not foreclose constructive experiments that are acceptable to all participants in the trial process and are consistent with the basic purposes of the statute.

Of course, we would still be reluctant, as we were in *Gomez*, to construe the additional duties clause to include responsibilities of far greater importance than the specified duties assigned to magistrates. But the litigants' consent makes the crucial difference on this score as well. As we explained in Part II, *supra*, the duties that a magistrate may perform over the parties' objections are generally subsidiary matters not comparable to supervision of jury selection. However, with the parties' consent, a district judge may delegate to a magistrate supervision of entire civil and misdemeanor trials. These duties are comparable in responsibility and importance to presiding over *voir dire* at a felony trial.

We therefore conclude that the Act's "additional duties" clause permits a magistrate to supervise jury selection in a felony trial provided the parties consent. In reaching this result, we are assisted by the reasoning of the Courts of Appeals for the Second, Third, and Seventh Circuits, all of which, following our decision in *Gomez*, have concluded that the rationale of that opinion does not apply when the defendant has not objected to the magistrate's conduct of the *voir dire*. See *United States* v. *Musacchia*, 900 F. 2d 493 (CA2 1990); *United States* v. *Wey*, 895 F. 2d 429 (CA7 1990); *Government of the Virgin Islands* v. *Williams*, 892 F. 2d 305 (CA3 1989).

We share the confidence expressed by the Third Circuit in *Williams* that this reading of the additional duties clause strikes the balance Congress intended between the interests

of the criminal defendant and the policies that undergird the Federal Magistrates Act. *Id.*, at 311. The Act is designed to relieve the district courts of certain subordinate duties that often distract the courts from more important matters.[9] Our reading of the "additional duties" clause will permit the courts, with the litigants' consent, to "continue innovative experimentations" in the use of magistrates to improve the efficient administration of the courts' dockets. See H. R. Rep. No. 94–1609, p. 12 (1976).[10]

At the same time, the requirement that a criminal defendant consent to the additional duty of jury selection protects a defendant's interest in requesting the presence of a judge at all critical stages of his felony trial.

> "If a criminal defendant, together with his attorney, believes that the presence of a judge best serves his interests during the selection of the jury, then *Gomez* preserves his right to object to the use of a magistrate. Where, on the other hand, the defendant is indifferent as to whether a magistrate or a judge should preside, then

---

[9] See, *e. g.*, H. R. Rep. No. 94–1609, p. 7 (1976) (magistrate is to "assist the district judge in a variety of pretrial and preliminary matters thereby facilitating the ultimate and final exercise of the adjudicatory function at the trial of the case"); S. Rep. No. 92–1065, p. 3 (1972) (magistrates "render valuable assistance to the judges of the district courts, thereby freeing the time of those judges for the actual trial of cases"); H. R. Rep. No. 1629, 90th Cong., 2d Sess., p. 12 (1968) (purpose of Act is "to cull from the ever-growing workload of the U. S. district courts matters that are more desirably performed by a lower tier of judicial officers").

[10] See, *e. g.*, *United States* v. *Peacock*, 761 F. 2d 1313, 1319 (CA9) (Kennedy, J.) ("There may be sound reasons . . . to allow the magistrate to assist [in *voir dire*], as was done in this case. [E]ach of the . . . circuits in the federal system . . . has been instructed to improve its efficiency in juror utilization. . . . The practice of delegating voir dire to a magistrate may assist the district courts in accomplishing this objective"), cert. denied, 474 U. S. 847 (1985).

it makes little sense to deny the district court the opportunity to delegate that function to a magistrate, particularly if such a delegation sensibly advances the court's interest in the efficient regulation of its docket." *Government of the Virgin Islands* v. *Williams*, 892 F. 2d, at 311.

In sum, the structure and purpose of the Federal Magistrates Act convince us that supervision of *voir dire* in a felony proceeding is an additional duty that may be delegated to a magistrate under 28 U. S. C. § 636(b)(3) if the litigants consent.[11] The Act evinces a congressional belief that magistrates are well qualified to handle matters of similar importance to jury selection but conditions their authority to accept such responsibilities on the consent of the parties. If a defendant perceives any threat of injury from the absence of an Article III judge in the jury selection process, he need only decline to consent to the magistrate's supervision to ensure that a judge conduct the *voir dire*.[12] However, when a

---

[11] We noted in *Gomez* that the legislative history of the Act nowhere listed supervision, without a defendant's consent, of a felony trial *voir dire* as a potential magistrate responsibility. We did call attention, however, to a Committee Report that referred to a "letter suggest[ing] that a magistrate selected juries only *with* consent of the parties." *Gomez* v. *United States*, 490 U. S. 858, 875–876, n. 30 (1989) (emphasis added) (citing H. R. Rep. No. 94–1609, p. 9 (1976)).

[12] We do not qualify the portion of our opinion in *Gomez* that explained why jury selection is an important function, the performance of which may be difficult for a judge to review with infallible accuracy. See 490 U. S., at 873–876. We are confident, however, that defense counsel can sensibly balance these considerations against other concerns in deciding whether to object to a magistrate's supervision of *voir dire*. We stress, in this regard, that defendants may waive the right to judicial performance of other important functions, including the conduct of the trial itself in misdemeanor and civil proceedings. Like jury selection, these duties require the magistrate to "observe witnesses, make credibility determinations, and weigh contradictory evidence," *id.*, at 874, n. 27, and therefore present equivalent problems for judicial oversight.

defendant does consent to the magistrate's role, the magistrate has jurisdiction to perform this additional duty.

## IV

There is no constitutional infirmity in the delegation of felony trial jury selection to a magistrate when the litigants consent. As we have already noted, it is arguable that a defendant in a criminal trial has a constitutional right to demand the presence of an Article III judge at *voir dire*. We need not resolve that question now, however, to determine that a defendant has no constitutional right to have an Article III judge preside at jury selection if the defendant has raised no objection to the judge's absence.

We have previously held that litigants may waive their personal right to have an Article III judge preside over a civil trial. See *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 848 (1986). The most basic rights of criminal defendants are similarly subject to waiver. See, *e. g.*, *United States* v. *Gagnon*, 470 U. S. 522, 528 (1985) (absence of objection constitutes waiver of right to be present at all stages of criminal trial); *Levine* v. *United States*, 362 U. S. 610, 619 (1960) (failure to object to closing of courtroom is waiver of right to public trial); *Segurola* v. *United States*, 275 U. S. 106, 111 (1927) (failure to object constitutes waiver of Fourth Amendment right against unlawful search and seizure); *United States* v. *Figueroa*, 818 F. 2d 1020, 1025 (CA1 1987) (failure to object results in forfeiture of claim of unlawful postarrest delay); *United States* v. *Bascaro*, 742 F. 2d 1335, 1365 (CA11 1984) (absence of objection is waiver of double jeopardy defense), cert. denied *sub nom. Hobson* v. *United States*, 472 U. S. 1017 (1985); *United States* v. *Coleman*, 707 F. 2d 374, 376 (CA9) (failure to object constitutes waiver of Fifth Amendment claim), cert. denied, 464 U. S. 854 (1983). See generally *Yakus* v. *United States*, 321 U. S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in

criminal as well as civil cases by the failure to make timely assertion of the right"). Just as the Constitution affords no protection to a defendant who waives these fundamental rights, so it gives no assistance to a defendant who fails to demand the presence of an Article III judge at the selection of his jury.

Even assuming that a litigant may not waive structural protections provided by Article III, see *Schor*, 478 U. S., at 850–851, we are convinced that no such structural protections are implicated by the procedure followed in this case. Magistrates are appointed and subject to removal by Article III judges. See 28 U. S. C. § 631. The "ultimate decision" whether to invoke the magistrate's assistance is made by the district court, subject to veto by the parties. See *United States* v. *Raddatz*, 447 U. S. 667, 683 (1980). The decision whether to empanel the jury whose selection a magistrate has supervised also remains entirely with the district court. Because "the entire process takes place under the district court's total control and jurisdiction," *id.*, at 681, there is no danger that use of the magistrate involves a "congressional attemp[t] 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts, *National Insurance Co.* v. *Tidewater Co.*, 337 U. S. 582, 644 (1949) (Vinson, C. J., dissenting) . . . ." *Schor*, 478 U. S., at 850.

In *Raddatz*, we held that the Constitution was not violated by the reference to a Magistrate of a motion to suppress evidence in a felony trial. The principal constitutional argument advanced and rejected in *Raddatz* was that the omission of a requirement that the trial judge must hear the testimony of the witnesses whenever a question of credibility arises violated the Due Process Clause of the Fifth Amendment. Petitioner has not advanced a similar argument in this case, no doubt because it would plainly be foreclosed by our holding in *Raddatz*. That case also disposes of the Article III argument that petitioner does raise. The reasoning

in JUSTICE BLACKMUN's concurring opinion is controlling here:

"As the Court observes, the handling of suppression motions invariably remains completely in the control of the federal district court. The judge may initially decline to refer any matter to a magistrate. When a matter is referred, the judge may freely reject the magistrate's recommendation. He may rehear the evidence in whole or in part. He may call for additional findings or otherwise 'recommit the matter to the magistrate with instructions.' See 28 U. S. C. § 636(b)(1). Moreover, the magistrate himself is subject to the Art. III judge's control. Magistrates are appointed by district judges, § 631(a), and subject to removal by them, § 631(h). In addition, district judges retain plenary authority over when, what, and how many pretrial matters are assigned to magistrates, and '[e]ach district court shall establish rules pursuant to which the magistrates shall discharge their duties.' § 636(b)(4). . . .

"It is also significant that the Magistrates Act imposes significant requirements to ensure competency and impartiality, §§ 631(b), (c), and (i), 632, 637 (1976 ed. and Supp. II), including a rule generally barring reduction of salaries of full-time magistrates, § 634(b). Even assuming that, despite these protections, a controversial matter might be delegated to a magistrate who is susceptible to outside pressures, the district judge—insulated by life tenure and irreducible salary—is waiting in the wings, fully able to correct errors. Under these circumstances, I simply do not perceive the threat to the judicial power or the independence of judicial decisionmaking that underlies Art. III. We do not face a procedure under which 'Congress [has] delegate[d] to a non-Art. III judge the authority to make final determinations on issues of fact.' *Post*, at 703 (dissenting opinion). Rather, we confront a procedure under which Congress has vested

in Art. III judges the discretionary power to delegate certain functions to competent and impartial assistants, while ensuring that the judges retain complete supervisory control over the assistants' activities." 447 U. S., at 685–686.

Unlike the provision of the Federal Magistrates Act that we upheld in *Raddatz*, § 636(b)(3) contains no express provision for *de novo* review of a magistrate's rulings during the selection of a jury. This omission, however, does not alter the result of the constitutional analysis. The statutory provision we upheld in *Raddatz* provided for *de novo* review only when a party objected to the magistrate's findings or recommendations. See 28 U. S. C. § 636(b)(1). Thus, *Raddatz* established that, to the extent "de novo review is required to satisfy Article III concerns, it need not be exercised unless requested by the parties." *United States* v. *Peacock*, 761 F. 2d 1313, 1318 (CA9) (Kennedy, J.), cert. denied, 474 U. S. 847 (1985). In this case, petitioner did not ask the District Court to review any ruling by the Magistrate. If a defendant in a future case does request review, nothing in the statute precludes a district court from providing the review that the Constitution requires. Although there may be other cases in which *de novo* review by the district court would provide an inadequate substitute for the Article III judge's actual supervision of the *voir dire*, the same is true of a magistrate's determination in a suppression hearing, which often turns on the credibility of witnesses. See *Raddatz*, 447 U. S., at 692 (Stewart, J., dissenting). We presume, as we did in *Raddatz* when we upheld the provision allowing reference to a magistrate of suppression motions, that district judges will handle such cases properly if and when they arise. See *id.*, at 681, n. 7. Our decision that the procedure followed in *Raddatz* comported with Article III therefore requires the same conclusion respecting the procedure followed in this case.

## V

Our disposition of the statutory and constitutional questions makes it unnecessary to discuss the third question that we asked the parties to brief and to argue.   We note, however, that the Solicitor General conceded that it was error to make the reference to the Magistrate in this case and relied entirely on the argument that the error was waived. Although that concession deprived us of the benefit of an adversary presentation, it of course does not prevent us from adopting the legal analysis of those Courts of Appeals that share our interpretation of the statute as construed in *Gomez*.   We agree with the view of the majority of Circuit Judges who have considered this issue, both before and after our decision in *Gomez*, that permitting a magistrate to conduct the *voir dire* in a felony trial when the defendant raises no objection is entirely faithful to the congressional purpose in enacting and amending the Federal Magistrates Act.[13]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE MARSHALL, with whom JUSTICE WHITE and JUSTICE BLACKMUN join, dissenting.

In *Gomez* v. *United States*, 490 U. S. 858 (1989), this Court held that the Federal Magistrates Act does not authorize magistrates to conduct jury selection at a felony trial.   In an

---

[13] See, *e. g., United States* v. *Alvarado*, 923 F. 2d 253 (CA2 1991); *Government of the Virgin Islands* v. *Williams*, 892 F. 2d 305 (CA3 1989); *United States* v. *Rivera-Sola*, 713 F. 2d 866 (CA1 1983); *United States* v. *Ford*, 824 F. 2d, at 1439–1440 (Jolly, J., concurring).   Cf. *United States* v. *Wey*, 895 F. 2d 429, 431 (CA7 1990) ("it may be that the defendant's consent could authorize the judge to designate a magistrate, under 28 U. S. C. § 636(b)(3), to preside over jury selection"); *Ford*, 824 F. 2d, at 1438–1439 (failure to object constitutes waiver of error); *United States* v. *DeFiore*, 720 F. 2d 757 (CA2 1983), cert. denied *sub nom. Coppola* v. *United States*, 466 U. S. 906 (1984).   But see *United States* v. *Martinez-Torres*, 912 F. 2d 1552 (CA1 1990) (en banc); *United States* v. *France*, 886 F. 2d 223 (CA9 1989).

amazing display of interpretive gymnastics, the majority twists, bends, and contorts the logic of *Gomez*, attempting to demonstrate that the consideration critical to our holding in that case was the defendant's refusal to consent to magistrate jury selection. I find *Gomez* to be considerably less flexible. Our reasoning in *Gomez* makes clear that the absence or presence of consent is entirely irrelevant to the Federal Magistrates Act's prohibition upon magistrate jury selection in a felony trial.

The majority's reconstruction of *Gomez* is not only unsound, but also unwise. By discarding *Gomez*'s categorical prohibition of magistrate felony jury selection, the majority unnecessarily raises the troubling question whether this practice is consistent with Article III of the Constitution. To compound its error, the majority resolves the constitutional question in a manner entirely inconsistent with our controlling precedents. I dissent.

## I

### A

The majority purports to locate the source of a magistrate's authority to conduct consented-to felony jury selection in the Act's "additional duties" clause, which states that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U. S. C. § 636(b)(3). Whether the additional duties clause authorizes a magistrate to conduct jury selection in a felony trial is a conventional issue of statutory interpretation. In *Gomez*, we held that "[t]he absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function." 490 U. S., at 875–876 (footnote omitted). In my view, the existence of a defendant's consent has absolutely no effect on that conclusion.

In *Gomez*, we rejected a literal reading of the additional duties clause that would have authorized magistrates to exercise *any* power not expressly prohibited by federal statute or the Constitution. See *id.*, at 864–865. Relying on precedent and legislative history, we emphasized that the additional duties clause is to be read according to Congress' intention that magistrates "handle subsidiary matters[,] [thereby] enabl[ing] district judges to concentrate on trying cases." *Id.*, at 872.

> "If district judges are willing to experiment with the assignment to magistrates of other functions in aid of the business of the courts, *there will be increased time available to judges for the careful and unhurried performance of their vital and traditional adjudicatory duties*, and a consequent benefit to both efficiency and the quality of justice in the Federal courts." H. R. Rep. No. 94–1609, p. 12 (1976) (emphasis added) (1976 amendments to Federal Magistrates Act); accord, S. Rep. No. 371, 90th Cong., 1st Sess., 26 (1967) (Federal Magistrates Act of 1968).[1]

We identified two reasons in *Gomez* for inferring that Congress intended jury selection in felony trials to be one of the "vital and traditional adjudicatory duties" retained by district

---

[1] This theme pervades the Act's legislative history. See, *e. g.*, S. Rep. No. 96–74, p. 3 (1979) (1979 amendments to Federal Magistrates Act) ("In enacting the Federal Magistrates Act in 1968, the Congress clearly intended that the magistrate should be a judicial officer whose purpose was to assist the district judge to the end that the judge could have more time to preside at the trial of cases"); H. R. Rep. No. 94–1609, p. 6 (1976) (same); S. Rep. 94–625, p. 6 (1976) (1976 amendments to Federal Magistrates Act) ("Without the assistance furnished by magistrates . . . the judges of the district courts would have to devote a substantial portion of their available time to various procedural steps rather than to the trial itself"); see also S. Rep. No. 371, 90th Cong., 1st Sess., 9 (1967) (Federal Magistrates Act is intended "to cull from the ever-growing workload of the U. S. district courts matters that are more desirably performed by a lower tier of judicial officers").

judges rather than delegated to magistrates. First, we noted that Congress felt it necessary to define expressly a magistrate's limited authority to conduct misdemeanor and civil trials. See 28 U. S. C. §§ 636(a)(3), 636(c). We concluded that "th[is] carefully defined grant of authority to conduct trials of civil matters and of minor criminal cases" constituted "an implicit withholding of the authority to preside at a felony trial." *Gomez*, 490 U. S., at 872. And in light of the traditional judicial and legislative understanding that jury selection is an essential component of a felony trial,[2] we determined that Congress' intention to deny magistrates the authority to preside at felony trials also extends to jury selection. See *id.*, at 871–872.

In my view, this structural inference is not at all affected by a defendant's consent. Under the Act, consent of the parties is a necessary condition of a magistrate's statutory authority to preside at a civil or misdemeanor trial. See 18 U. S. C. § 3401(b); 28 U. S. C. § 636(c)(1). To hold, as the majority does, that a magistrate may likewise conduct jury selection in a felony trial so long as the defendant consents is to treat the magistrate's authority in this part of the felony trial as perfectly coextensive with his authority in civil and misdemeanor trials—the reading of the Act that *Gomez* categorically rejected.

---

[2] As we have observed, " ' "[W]here the indictment is for a felony, the trial commences at least from the time when the work of empanelling the jury begins." ' " *Gomez* v. *United States*, 490 U. S. 858, 873 (1989), quoting *Lewis* v. *United States*, 146 U. S. 370, 374 (1892), quoting *Hopt* v. *Utah*, 110 U. S. 574, 578 (1884). Moreover, "[j]ury selection is the primary means by which a court may enforce a defendant's right to be tried by a jury free from ethnic, racial, or political prejudice, or predisposition about the defendant's culpability." *Gomez*, *supra*, at 873 (citations omitted). We discerned Congress' recognition of this understanding from its passage of the Speedy Trial Act, 18 U. S. C. § 3161, and from its placement of rules relating to juries and jury selection in a chapter of the Federal Rules of Criminal Procedure entitled "Trial." See *Gomez*, *supra*, at 873, citing Fed. Rules Crim. Proc. 23 and 24.

The second basis for our conclusion in *Gomez* that Congress intended felony jury selection to be nondelegable was Congress' failure expressly to provide for judicial review of magistrate jury selection in felony cases. The Federal Magistrates Act provides two separate standards of judicial review: "clearly erroneous or contrary to law" for magistrate resolution of nondispositive matters, see 28 U. S. C. § 636(b) (1)(A), and *"de novo"* for magistrate resolution of dispositive matters, see § 636(b)(1)(B)–(C). We deemed Congress' failure to identify *any* standard of judicial review for jury selection in felony trials to be persuasive evidence of Congress' intent that magistrates not perform this function. *Gomez, supra*, at 873–874.

Again, I fail to see how a defendant's consent to a magistrate's exercise of such authority can alter this inference. Congress said no more about the standard of review for consented-to magistrate jury selection than it did about the standard for unconsented-to magistrate jury selection. Nor does the majority identify anything in the statute to indicate the appropriate standard for consented-to magistrate jury selection.

The majority opines that "nothing in the statute precludes" judicial review, *ante*, at 939. However, it fails to explain how such review may be achieved. The majority's silence is regrettable. In *Gomez*, we recognized that jury selection is most similar to the functions identified as "dispositive matters," for which the Act prescribes a *de novo* review standard. 490 U. S., at 873. We expressed "serious doubts," however, as to whether any review could be meaningfully conducted. *Id.*, at 874.[3] We likewise concluded that re-

---

[3] "To detect prejudices, the examiner—often, in the federal system, the court—must elicit from prospective jurors candid answers about intimate details of their lives. The court further must scrutinize not only spoken words but also gestures and attitudes of all participants to ensure the jury's impartiality. But only words can be preserved for review; no tran-

examination of individual jurors by the district judge would not be feasible because "as a practical matter a second interrogation might place jurors on the defensive, engendering prejudices irrelevant to the facts adduced at trial." *Id.*, at 875, n. 29. These difficulties in providing effective review of magistrate jury selection were central to our construction of the Act in *Gomez*, yet they are essentially ignored today.[4]

In *Gomez*, we found confirmation of the inferences that we drew from the statutory text in "[t]he absence of a specific reference to jury selection in . . . the legislative history." *Id.*, at 875. See *ante*, at 930. The legislative history of the Act offers no more support for consented-to magistrate felony jury selection.[5]

In response to the paucity of support for its construction, the majority notes that in *Gomez* we "call[ed] attention" to a House Committee Report that "referred" to a letter from a district judge mentioning jury selection as a duty assigned to

---

script can recapture the atmosphere of the *voir dire*, which may persist throughout the trial." *Gomez, supra*, at 874–875 (citations omitted).

[4] The majority concedes that magistrate jury selection "may be difficult for a judge to review with infallible accuracy." *Ante*, at 935, n. 12. But it dismisses any concerns with respect to the difficulty of effective judicial review, stating that the defendant can eliminate the need for judicial review altogether by simply declining to consent to magistrate jury selection. *Ante*, at 935, and n. 12. This rationalization misses the point. Insofar as the Federal Magistrates Act insists that magistrate functions be subject to judicial review, the impossibility of effective review is reason *not* to construe the additional duties clause as authorizing magistrates to conduct felony jury selection, regardless of whether the parties consent. See *Gomez, supra*, at 874–875.

[5] In *Gomez*, we noted that Committee Reports accompanying the 1976 and 1979 amendments to the Magistrates Act contained charts cataloging magistrate functions. In determining Congress' understanding of the permissible scope of magistrate duties, we found it relevant that not one of the charts mentioned jury selection. See *Gomez*, 490 U. S., at 875, n. 30 (citing H. R. Rep. No. 96–287, pp. 4–5 (1979); S. Rep. No. 96–74, at 3; H. R. Rep. No. 94–1609, at 7; S. Rep. No. 94–625, at 5). Needless to say, the charts also contain no mention of jury selection where the parties have consented to magistrate supervision.

magistrates. *Ante*, at 935, n. 11. While the majority observes that the letter "'suggest[ed] that a magistrate selected juries only *with* consent of the parties,'" *ibid.*, quoting *Gomez*, 490 U. S., at 875, n. 30 (emphasis added by majority), it neglects to record other salient facts that we noted about this letter. In particular, the letter was the "*lone reference*" in the entire legislative history to such authority. *Ibid.* (emphasis added). Moreover, the letter suggested that magistrate jury selection took place "*perhaps only in civil trials.*" *Id.*, at 876, n. 30 (emphasis added). Finally, as we pointed out in *Gomez*,

> "[the letter] displays little concern about the validity of such assignments: 'How can we do all of this? We just do it. It's not necessary that we find authority in black and white before we give something to the magistrate. . . . Sure we might get shot down once in a while by an appellate court. So what?'" *Ibid.* (citation omitted).

### B

It is clear that the considerations that motivated our holding in *Gomez* compel the conclusion that the Federal Magistrates Act does not permit magistrate felony jury selection even when the defendant consents. I find the majority's arguments to the contrary wholly unpersuasive.

According to the majority, "[t]his case differs critically from *Gomez*" because petitioner's counsel consented to the delegation of jury selection to the Magistrate. *Ante*, at 932. Although it asserts that this factor was essential to our analysis, the majority fails to explain how consent has any bearing on the statutory power of a magistrate to conduct felony jury selection. As I have already indicated, the reasoning behind our conclusion in *Gomez* that Congress did not endow magistrates with jurisdiction to preside over felony jury selection had nothing to do with the defendant's refusal to consent to such jurisdiction.

Unable to support its revisionist construction of the Act with what we said in *Gomez*, the majority seeks to bolster its construction by noting that, provided the parties consent, magistrates may conduct civil and misdemeanor trials and that "[t]hese duties are comparable in responsibility and importance to presiding over *voir dire* at a felony trial." *Ante*, at 933. The majority's analogy misses the point. The fact that Congress imposed the condition of consent on magistrates' exercise of expressly-provided authority does not prove that Congress also authorized magistrates to conduct trial duties not expressly enumerated in the Federal Magistrates Act—such as supervision of felony jury selection. At most, these specifically enumerated grants of trial authority suggest that *if* Congress had intended to confer on magistrates authority to conduct felony jury selection, it *would have* predicated that authority on the parties' consent. However, as I have already discussed, see *supra*, at 942–943, construing the Act as authorizing magistrates to conduct consented-to jury selection in felony cases merely because the Act authorizes consented-to jurisdiction in civil and misdemeanor cases is to draw an inference from Congress' silence precisely opposite to the inference we drew in *Gomez*.[6]

---

[6] Even if I were to accept the majority's conclusion that the scope of a magistrate's authority under the additional duties clause turns on litigant consent, I still could not accept the majority's assumption that there was effective consent in this case. Because the additional duties clause contains no language predicating delegation of an additional duty upon litigant consent, it likewise contains nothing indicating what constitutes "consent" to the delegation of an additional duty. I would think, however, that the standard governing a party's consent to delegation of a portion of a felony trial under the additional duties clause should be at least as strict as that governing delegation of a misdemeanor trial to a magistrate. Under the Act, before a magistrate can conduct a misdemeanor trial, the magistrate must explain to the defendant that he has a right to a trial before a district court judge. If the defendant elects to proceed before the magistrate, the *defendant* must consent *in writing*. See 18 U. S. C. § 3401(b); see also 28 U. S. C. § 636(a)(3) (incorporating requirements of 18 U. S. C. § 3401 into the Federal Magistrates Act). The procedural safeguard of written con-

Finally, the majority defends its construction of the additional duties clause by stating that it will permit " 'continue[d] innovative experimentations' in the use of magistrates to improve the efficient administration" of the district courts. *Ante*, at 934. Taken literally, such a rationale admits of no limits, and for this reason it cannot function as a legitimate basis for construing the scope of a magistrate's permissible "additional duties." As in *Gomez*, we must give content to the additional duties clause by looking to Congress' intention that magistrates be delegated administrative and other quasi-judicial tasks in order to free Article III judges to conduct trials, most particularly *felony* trials. See *supra*, at 942. By creating authority for magistrates to preside over a "critical stage" of the felony trial, see *Gomez*, *supra*, at 873, merely because a defendant fails to request a judge, the majority completely misapprehends both Congress' conception of the appropriate role to be played by magistrates and our analysis in *Gomez*.

## II

I have outlined why I believe the only defensible construction of the Federal Magistrates Act is that jury selection in a felony trial can never be one of a magistrate's "additional duties"—regardless of whether a defendant consents. But even if I believed that mine was only one of two "reasonable" interpretations, I would still reject the majority's construction of the Act, because it needlessly raises a serious constitutional question: whether jury selection by a magistrate—

---

sent by the defendant " 'show[s] a statutory intent to preserve trial before the district judge as the principal—rather than an elective or alternative—mode of proceeding in minor offense cases.' " *Gomez*, *supra*, at 872, n. 24, (quoting 114 Cong. Rec. 27342 (1968) (remarks of Rep. Poff)). In this case, the defendant did not consent in writing; in fact, the *defendant* did not proffer consent in any form. Instead, what the majority accepts as sufficient consent were merely verbal remarks made by defense counsel at a pretrial conference and jury selection. See App. 2, 5.

even when a defendant consents — is consistent with Article III.

It is well established that we should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez*, 490 U. S., at 864; accord, *e. g.*, *Edward J. DeBartolo Corp.* v. *Florida Gulf Coast Building & Construction Trades Council*, 485 U. S. 568, 575 (1988); *Commodity Futures Trading Comm'n* v. *Schor*, 478 U. S. 833, 841 (1986); *Ashwander* v. *TVA*, 297 U. S. 288, 348 (1936) (Brandeis, J., concurring). Given the inherent complexity of Article III questions, the canon of constitutional avoidance should apply with particular force when an Article III issue is at stake. Cf. *Northern Pipeline Construction Co.* v. *Marathon Pipe Line Co.*, 458 U. S. 50, 90 (1982) (REHNQUIST, J., concurring in judgment) ("Particularly in an area of constitutional law such as that of 'Art. III Courts,' with its frequently arcane distinctions and confusing precedents, rigorous adherence to the principle that this Court should decide no more of a constitutional question than is absolutely necessary accords with both our decided cases and with sound judicial policy").

Although this principle guided our analysis in *Gomez*, see 490 U. S., at 864, it is all but forgotten today. The majority simply dismisses altogether the seriousness of the underlying constitutional question: "[W]e have no trouble concluding that there is no Article III problem when a district court judge permits a magistrate to conduct *voir dire* in accordance with the defendant's consent." *Ante*, at 932. The majority's self-confidence is unfounded. It is only by unacceptably manipulating our Article III teachings that the majority succeeds in avoiding the difficulty that attends its construction of the Act.

As the Court explained in *Schor*, Article III's protections have two distinct dimensions. First, Article III "safeguard[s] litigants' 'right to have claims decided before judges who are free from potential domination by other branches of

government.'" *Schor, supra,* at 848, quoting *United States* v. *Will,* 449 U. S. 200, 218 (1980). Second, Article III "serves as 'an inseparable element of the constitutional system of checks and balances'" by preserving "the role of the Judicial Branch in our tripartite system" of government. *Schor, supra,* at 850, quoting *Northern Pipeline, supra,* at 58. Although parties may waive their personal guarantee of an independent Article III adjudicator, *Schor, supra,* at 848, parties may *not* waive Article III's structural guarantee.

> "Article III, § 1, safeguards the role of the Judicial Branch in our tripartite system by barring congressional attempts 'to transfer jurisdiction [to non-Article III tribunals] for the purpose of emasculating' constitutional courts . . . . To the extent that this structural principle is implicated in a given case, *the parties cannot by consent cure the constitutional difficulty* for the same reason that the parties by consent cannot confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III, § 2. When these Article III limitations are at issue, notions of consent and waiver cannot be dispositive because the limitations serve institutional interests that the parties cannot be expected to protect." 478 U. S., at 850–851 (emphasis added; citations omitted).

In *Gomez,* we recognized and attempted to accommodate "abiding concerns regarding the constitutionality of delegating felony trial duties to magistrates." See 490 U. S., at 863. Because jury selection is "a critical stage" of the felony trial, see *id.,* at 873, there is a serious question, as several Courts of Appeals have noted, whether allowing a magistrate to conduct felony jury selection "impermissibly intrude[s] on the province of the judiciary," *Schor, supra,* at 851–852. See *United States* v. *Trice,* 864 F. 2d 1421, 1426 (CA8 1988), cert. dism'd, 491 U. S. 914 (1989); *United States* v. *Ford,* 824 F. 2d 1430, 1434–1435 (CA5 1987) (en banc), cert. denied, 484 U. S. 1034 (1988).

Indeed, this problem admits of no easy solution. This Court's decision in *United States* v. *Raddatz*, 447 U. S. 667 (1980), suggests that delegation of Article III powers to a magistrate is permissible only if the ultimate determinations on the merits of delegated matters are made by the district judge. See *id.*, at 683 ("[A]lthough the [Federal Magistrates Act] permits the district court to give to the magistrate's proposed findings of fact and recommendations 'such weight as [their] merit commands and the sound discretion of the judge warrants,' that delegation does not violate Art. III *so long as the ultimate decision is made by the district court*" (emphasis added; citation omitted)).[7] In *Schor*, we likewise emphasized the availability of *de novo* judicial review in upholding the performance of core Article III powers by an Article I tribunal. See 478 U. S., at 853. But this means of satisfying the Constitution is not available here. For, as I have noted, *supra*, at 944, the Federal Magistrates Act does not expressly provide for judicial review of felony jury selection, and in *Gomez* we expressed "serious doubts" whether such review was even possible. See 490 U. S., at 874.

The majority contends that magistrate jury selection raises no Article III structural difficulties, because "'the entire process takes place under the district court's total control and jurisdiction.'" *Ante*, at 937, quoting *Raddatz*, *supra*, at 681. However, as *Raddatz* and *Schor* underscore, the requirement of "the district court's total control and jurisdiction" must include the availability of meaningful judicial review of the magistrate's actual rulings at jury selection. The majority's observation that "nothing in the statute precludes a dis-

---

[7] The majority seeks to evade this difficulty by pronouncing that JUSTICE BLACKMUN's concurring opinion in *Raddatz* now "control[s]" the constitutional analysis of a delegation of Article III duties to a magistrate. *Ante*, at 938. JUSTICE BLACKMUN's opinion in *Raddatz*, however, offers little repose for the majority, for JUSTICE BLACKMUN likewise identifies the availability of judicial review as a necessary predicate of the constitutionality of any delegation of Article III duties to a magistrate. See *United States* v. *Raddatz*, 447 U. S., at 685 (BLACKMUN, J., concurring).

trict court from providing the review that the Constitution requires," *ante*, at 939, is equally unavailing. The critical question for Article III purposes is whether meaningful judicial review of magistrate felony jury selection can be accomplished. The majority does not answer this question, and *Gomez* strongly suggests that it cannot.

Because it ignores the teachings of *Raddatz* and *Schor*, the majority's analysis of the Article III difficulty posed by its construction of the Federal Magistrates Act raises the question whether these decisions remain good law. This consequence is particularly unfortunate, because, as I have set forth above, the most coherent reading of the Federal Magistrates Act avoids these problems entirely.

I dissent.

JUSTICE SCALIA, dissenting.

When, at a pretrial conference, the United States District Judge assigned to this case asked petitioner's counsel (in petitioner's presence) whether he had "[a]ny objection to picking the jury before a magistrate," counsel responded, "I would love the opportunity." App. 2. Before conducting *voir dire*, the Magistrate herself asked counsel, "I have the consent of your client to proceed with the jury selection?" Counsel answered, "Yes, your Honor." *Id.*, at 5. After the jury was selected under the Magistrate's supervision, but before it was sworn, the parties met with the District Judge to discuss unresolved pretrial matters. Neither petitioner nor his counsel raised any objection at that time—or at any other point during the trial—to the Magistrate's role in jury selection. Two significant events transpired thereafter. First, the jury convicted petitioner on all counts. Second, after the conviction but prior to sentencing, this Court announced *Gomez* v. *United States*, 490 U. S. 858 (1989), holding that the Federal Magistrates Act did not authorize magistrates to conduct felony *voir dire* (in that case, where a defendant had objected). On appeal, petitioner sought to raise a *Gomez* claim, but the Court of Appeals held that his consent below

precluded him from raising this newly discovered objection to the Magistrate's role.

As a general matter, of course, a litigant must raise all issues and objections at trial. See *Freytag* v. *Commissioner, ante*, at 894–895 (SCALIA, J., concurring in judgment). For criminal proceedings in the federal courts, this principle is embodied in Federal Rule of Criminal Procedure 51, which requires "a party, at the time the ruling or order of the [trial] court is made or sought, [to] mak[e] known to the court the action which that party desires the court to take or that party's objection to the action of the court and the grounds therefor."

Rule 51's command is not, however, absolute. One of the hoariest precepts in our federal judicial system is that a claim going to a court's subject-matter jurisdiction may be raised at any point in the litigation by any party. See *Freytag, ante*, at 896 (SCALIA, J., concurring in judgment). Petitioner seeks to invoke that exception here, relying on our statement in *Gomez* that the Magistrate lacked "jurisdiction to preside" over the *voir dire* in that case, 490 U. S., at 876. But, as Judge Easterbrook has aptly observed, "'jurisdiction' . . . is a many-hued term." *United States* v. *Wey*, 895 F. 2d 429, 431 (CA7), cert. denied, 497 U. S. 1029 (1990). We used it in *Gomez* as a synonym for "authority," not in the technical sense involving subject-matter jurisdiction. The judgment here is the judgment of the District Court; the relevant question is whether *it* had subject-matter jurisdiction; and there is no doubt that it had. The fact that the court may have improperly delegated to the Magistrate a function it should have performed personally goes to the lawfulness of the manner in which it acted, but not to its jurisdiction to act.

This venerable exception to the contemporaneous-objection rule being inapplicable here, petitioner plainly forfeited the *right* to advance his current challenges to the Magistrate's role. In certain narrow contexts, however, appellate courts have *discretion* to overlook a trial forfeiture. The most im-

portant of these is described in Federal Rule of Criminal Procedure 52(b): In criminal cases, an appellate court may notice "errors or defects" not brought to the attention of the trial court if they are "plain" and "affec[t] substantial rights." See *United States* v. *Young*, 470 U. S. 1, 15, and n. 12 (1985). Petitioner's contention that this case falls into that exception comes up against our admonition that Rule 52(b) applies only to errors that are obvious as well as significantly prejudicial. See, *e. g.*, *United States* v. *Frady*, 456 U. S. 152, 163, and nn. 13, 14 (1982). The error alleged here was anything but obvious. At the time this case was tried, the Second Circuit had held that a magistrate was authorized to conduct felony *voir dire* even if the defendant objected, see *United States* v. *Garcia*, 848 F. 2d 1324 (1988), rev'd *sub nom. Gomez* v. *United States*, 490 U. S. 858 (1989). No Circuit had held that it was error for a magistrate to conduct *voir dire* where the defendant consented. Perhaps the best indication that there was no "plain" error, of course, is that five Justices of this Court today hold that there was no error at all.*

Even when an error is not "plain," this Court has in extraordinary circumstances exercised discretion to consider claims forfeited below. See, *e. g.*, *Glidden Co.* v. *Zdanok*, 370 U. S. 530, 535–536 (1962) (opinion of Harlan, J.); *Grosso* v. *United States*, 390 U. S. 62, 71–72 (1968); *Hormel* v. *Helvering*, 312 U. S. 552, 556–560 (1941). In my view, that course is appropriate here. Petitioner's principal claims are that the Federal Magistrates Act does not allow a district court to assign felony *voir dire* to a magistrate even with the defendant's consent, and that in any event the consent here was ineffective because given orally by counsel and not in writing by the defendant. By definition, these claims can be

---

*Because I conclude that the alleged error was not "plain," I have no occasion to assess its prejudicial impact, assuming that that is possible. Cf. *Gomez* v. *United States*, 490 U. S., at 876; *Arizona* v. *Fulminante*, 499 U. S. 279, 296 (1991).

advanced *only* by a litigant who will, if ordinary rules are applied, be deemed to have forfeited them: A defendant who objects will not be assigned to the magistrate at all. Thus, if we invariably dismissed claims of this nature on the ground of forfeiture, district courts would *never* know whether the Act authorizes them, with the defendant's consent, to refer felony *voir dire* to a magistrate, and, if so, what form the consent must take. Cf. 18 U. S. C. § 3401(b) (defendant's consent to magistrate in misdemeanor trial must be in writing).

Given the impediments to the proper assertion of these claims, I believe we are justified in reaching the statutory issue today to guide the district courts in the future performance of their duties. It is not that we *must* address the claims because all legal questions require judicial answers, cf. *Valley Forge Christian College* v. *Americans United for Separation of Church and State, Inc.*, 454 U. S. 464, 489 (1982); *Webster* v. *Doe*, 486 U. S. 592, 612–613 (1988) (SCALIA, J., dissenting), but simply that the relevant rules and statutes governing forfeiture, as we have long construed them, recognize a limited discretion which it is eminently sensible to exercise here.

Turning to the merits of the statutory claim, I am in general agreement with JUSTICE MARSHALL. In my view, *Gomez* was driven not primarily by the constitutional problems associated with forcing a litigant to adjudicate his federal claim before a magistrate, but by ordinary principles of statutory interpretation. By specifically authorizing magistrates to perform duties in civil and misdemeanor trials, and specifying the manner in which parties were to express their consent in those situations, the statute suggested *absence* of authority to preside over felony trials through some (unspecified) mode of consent. The canon of *ejusdem generis* keeps the "additional duties" clause from swallowing up the rest of the statute. See *Gomez, supra*, at 872.

I would therefore conclude (as respondent in fact conceded) that district courts are not authorized by the Federal Magis-

trates Act to delegate felony *voir dire* to magistrates. Having reached that conclusion, I need not, and do not, answer the serious and difficult constitutional questions raised by the contrary construction. I note, however, that while there may be persuasive reasons why the use of a magistrate in these circumstances is constitutional, the Court does not provide them today. The Court's analysis turns on the fact that courts *themselves* control the decision whether, and to what extent, magistrates will be used. *Ante,* at 937–939. But the Constitution guarantees not merely that no branch will be forced by one of the *other* branches to let someone else exercise its assigned powers—but that none of the branches will *itself* alienate its assigned powers. Otherwise, the doctrine of unconstitutional delegation of legislative power (which delegation cannot plausibly be compelled by one of the other branches) is a dead letter, and our decisions in *A. L. A. Schechter Poultry Corp.* v. *United States,* 295 U. S. 495 (1935), and *Panama Refining Co.* v. *Ryan,* 293 U. S. 388 (1935), are inexplicable.