UNITED STATES of America, Plaintiff,

v.

Kelvin James LAWRENCE, Defendant,

and

Leadership Training Institute, Inc., Sioux Falls, SD, and its successors and assigns, Garnishee.

No. CR 96–30016.

United States District Court, D. South Dakota, Central Division.

Feb. 19, 2008.

Aloysius J. Arendt, Arendt Law Office, Pierre, SD, for Defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

CHARLES B. KORNMANN, District Judge.

Defendant was sentenced on October 16, 1996, to 24 months custody, three years supervised release, a $5,000 fine, and $115,000 restitution for false statement to a Government Department or Agency. The government has repeatedly undertaken to collect the monetary debt through garnishment pursuant to the Federal Debt Collection Procedures Act, 28 U.S.C. § 3205.

On May 22, 2007, the government filed an application for a writ of continuing garnishment as to the above garnishee. The application was granted. On July 23, 2003, the garnishee answered. The government filed an objection to the answer and requested a hearing, Doc. 124. Garnishee filed a motion to quash garnishment, Doc. 125.

This matter was referred to United States Magistrate Judge Mark A. Moreno. Judge Moreno conducted an evidentiary hearing on September 24, 2007, and issued his report and recommendation, Doc. 137, on November 29, 2007. No objections to the report were filed.

The Court has conducted a review of the report and recommendation and the file herein and finds that the report and recommendation of the magistrate judge should be adopted.

Now, therefore,

IT IS ORDERED:

1. The report and recommendation of the U.S. Magistrate Judge filed November 29, 2007, Doc. 137, shall be and is hereby adopted.

Jan Leslie Holmgren, Assistant United States Attorney, Sioux Falls, SD, for Plaintiff.

2. The government's objection to the garnishee's answer. Doc. 124, is sustained.

3. The motion to quash garnishment, Doc. 125, is denied.

Dated this 15th day of February, 2008.

### 2008 DSD 6

### REPORT AND RECOMMENDATIONS CONCERNING OBJECTIONS TO GARNISHEE'S ANSWER AND DEFENDANT'S MOTION TO QUASH GARNISHMENT

**MARK A. MORENO, United States Magistrate Judge.**

[¶ 1] After pleading guilty to the offense of making a false statement to a government department or agency, Defendant, Kelvin James Lawrence, was sentenced on October 16, 1996, to 24 months of custody and three years of supervised release, and to pay a fine of $5,000, a $50 special assessment and restitution in the amount of $115,000. Since then, Plaintiff, United States of America (Government), has repeatedly undertaken to collect the debt under the Fair Debt Collection Procedures Act (FDCPA), 28 U.S.C. § 3001 *et seq.*, and in particular, the garnishment provisions thereof found in 28 U.S.C. § 3205.

[¶ 2] On May 24, 2007, the Government served Garnishee, Leadership Training Institute, Inc., with an application for writ of continuing garnishment. On July 23, 2007, Garnishee filed an answer to the application. The Government then filed an objection to the answer and requested a hearing. Subsequently, Defendant moved to quash the garnishment and the Government submitted a response to the motion, resisting the same.

[¶ 3] On September 5, 2007, the District Court[1] referred the case to this Court pursuant to 28 U.S.C. § 3008. Later that same month, a hearing was held in accordance with § 3205(c)(5) at which Defendant and his counsel, and counsel for the Government appeared.

### I.

[¶ 4] In June, 2006, The Government made written demand of Defendant for payments toward his debt in the amount of $300 per month, to begin on July 15, 2006, and for financial information to determine his ability to pay. Defendant's counsel responded by letter indicating that Defendant was unemployed, was mowing yards, trying to sell an occasional computer and doing fishing guide work, but would agree to pay $300 per month because that was probably all he could afford. Defendant did not make his July 15th payment, but did submit a $300 payment on August 11, 2006 and a $600 payment the following month.

[¶ 5] On November 9, 2006, Defendant's counsel wrote a letter requesting that his payments remain at $300, regardless of his employment. The Government agreed to accept $300 per month payments until Defendant secured full-time employment. The Government made it clear, however, that once Defendant became employed on a full-time basis, it expected Defendant to make regular monthly payments of 20 percent of his net disposable income[2], and if he failed or refused to do so, the Government would proceed, as before, to garnish his wages.

---

1. The Honorable Charles B. Kornmann, United States District Judge, presiding.

2. Apparently, the Government set voluntary payments of 20 percent of Defendant's net wage, 5 percent less than it could obtain by garnishment, *see* 15 U.S.C. § 1673(a), as an incentive to get him to pay on his own.

[¶ 6] Upon learning that Defendant was again employed, the Government made application in May, 2006, for another writ of continuing garnishment. Defendant had, from August, 2006 through April, 2007, continued to pay $300 per month, but had not disclosed his new job or provided a financial statement to the Government.

[¶ 7] Garnishee answered the Government's garnishment writ and the Government objected to the answer, asserting that Garnishee had failed to include the date on which Garnishee was served with the writ, and had incorrectly stated the beginning and ending dates for the withholding time period. Thereafter, Defendant filed a motion seeking to quash the garnishment on the ground that the garnishment violated the District Court's October 16, 1996 Judgment and the parties' November, 2006 "agreement." The Government filed a response to the motion. A hearing was later held at which oral arguments were made and additional correspondence was received into evidence. Garnishee did not appear at the hearing, either by counsel or otherwise.

## II.

[¶ 8] During the hearing, the Court raised the question of whether it was authorized under § 3008 to enter a final, appealable order, or whether it could only decide the objection and motion to quash on a report and recommendation basis. The Government submitted a post-hearing memorandum on this question, wherein it concluded that there was no definitive answer to the same.

[¶ 9] § 3008 states as follows:

A district court of the United States may assign its duties in proceedings under this chapter [28 U.S.C. §§ 3001 *et seq.*] to a United States magistrate to the extent not inconsistent with the Constitution and laws of the United States.

[¶ 10] The plain language of the statute itself appears to allow a magistrate judge to exercise whatever duties a district court has in proceedings under the FDCPA so long as the magistrate judge does so in a manner that is consistent with both the Constitution and federal law. In addition, because collection actions brought by the Government under the FDCPA, even in connection with the enforcement of a criminal judgment, are civil in nature, a magistrate judge would presumably be authorized by 28 U.S.C. § 636(c) and Fed R. Civ. P. 73 to preside over such actions and to decide issues raised in them like s/he would do in any civil consent case. *See Orsini v. Wallace,* 913 F.2d 474, 476–79 (8th Cir.1990), *cert. denied,* 498 U.S. 1128, 111 S.Ct. 1093, 112 L.Ed.2d 1197 (1991); *see also Peretz v. United States,* 501 U.S. 923, 927–40, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991). Some FDCPA decisions rendered by magistrate judges, while not making reference to the authority for doing so, have seemingly been by final appealable orders, *see United States v. Himebaugh,* No. 02–CR–0077–002–CVE, 2007 WL 1462430 at **1–2 (N.D.Okla. May 7, 2007); *United States v. Cap Quality Care, Inc.,* 400 F.Supp.2d 295, 296–97, 300 (D.Me.2005); *Chao v. Vidtape, Inc.,* No. CV–98–3359 (ETB), 2004 WL 203008 at **1, 6 (E.D.N.Y. Jan. 30, 2004); *United States v. Rice,* 196 F.Supp.2d 1196, 1197–98, 1202 (N.D.Okla.2002); *N.L.R.B. v. M and V Painting, Inc.,* No. CIV.A. 97–CV–75019, 2001 WL 1005579 at **1–2 (E.D.Mich. Oct. 29, 2001), while others have been on a report and recommendation basis, *see United States v. Pugh,* 445 F.3d 1066, 1067–68 (8th Cir.2006); *United States v. Benford,* No. 05–74755, 2007 WL 1500104 at **1–2 (E.D.Mich. May 22, 2007); *United States v. Ahmed,* No. 98–cr–00456–RPM–CBS, 2007 WL 1430095 at **1–2 (D.Colo. May 14, 2007); *United States v. Texas Mun. Retirement System,*

No. 4:06MC14, 2006 WL 3839165 at *1 (E.D.Tex. Dec. 29, 2006); *United States v. Ekpenyong*, No. CV00–116–TUC–FRZ (GEE), 2006 WL 3496857 at **1–2 (D.Ariz. Nov. 30, 2006); *United States v. Wells*, No. 06–10589, 2006 WL 3203905 at **1, 3 & n. 1 (E.D.Mich. Nov. 3, 2006); *United States v. Cooper*, No. 02–40069–SAC, 2006 WL 3512936 at **1–2, 6 (D.Kan. Nov. 1, 2006); *United States v. Kemp*, No. 3–96–CR–300–P, 2002 WL 31548868 at **1–3 (N.D.Tex. Nov. 12, 2002); *United States v. George*, 144 F.Supp.2d 161, 162, 166–67 (E.D.N.Y. 2001).

[¶ 11] The Court need not tarry here over the issue of whether or not it can rule on the objection and motion outright because it concludes that the safer and more appropriate course of action, consistent with 28 U.S.C. § 636(b)(1), is to simply issue a report and recommendation. *See Wells*, 2006 WL 3203905 at **1, 3 & n. 1. While the Government and Defendant have consented to the Court making a final, appealable decision in this case, Garnishee, also a party to the case, has not done so, thereby depriving the Court of § 636(c) jurisdiction. *See* Fed.R.Civ.P. 73(a) (requiring the consent of "all parties" before a magistrate judge may exercise the authority provided in § 636(c)).

### III.

[¶ 12] Garnishee did not appear at the hearing or otherwise challenge the objections to its answer. Notwithstanding this, the Court, has independently reviewed the objections, finds that they are well taken and should be sustained. Garnishee failed to disclose the date on which it was served with the writ of continuing garnishment. The Government's return receipt, attached as Exhibit 1 to its objections, reflects that Garnishee acknowledged receipt of the writ on May 30, 2007.

[¶ 13] Moreover, inasmuch as service was effectuated on May 30th, the relevant pay period could not have begun one week later, on June 7, 2007, as Garnishee alleges. Instead, the correct pay period in effect on May 30th, would have begun on May 24, 2007 and ended on June 6, 2007, not the June 7th through June 20, 2007 time period set forth in Garnishee's answer. This being the case, Garnishee would have been required to withhold beginning with the pay period in effect on May 30th, the date it accepted service of the writ.

[¶ 14] Accordingly, Garnishee's answer to the writ of garnishment is deficient and the Government's objections should be sustained. Garnishee should forthwith be directed to file an amended answer.

### IV.

[¶ 15] Defendant claims that the writ of garnishment, issued by the Government, violates the District Court's October 16, 1996 Judgment and the "agreement" entered into by the parties in November, 2006. The Court disagrees.

### A.

[¶ 16] The Judgment in the underlying criminal case required Defendant to pay a $5,000 fine, a special assessment of $50 and $115,000 in restitution, with payment to be made "in full immediately" and, in the event the entire amount had not been paid prior to the commencement of his supervision, that there be a "minimum payment schedule of $200 per month." While Defendant was under supervision, the District Court reduced Defendant's "minimum payment schedule" to "$125 a month."

[¶ 17] The sentencing court is responsible for ordering restitution, *see* 18 U.S.C. § 3556, and enforcing it, during supervision, through the powers granted to the court by 18 U.S.C. §§ 3613A and 3614. Because these powers are tied to the

court's authority to modify or revoke supervised release, they are of limited duration. 18 U.S.C. § 3583(e); *see also United States v. Morales,* 45 F.3d 693, 696–702 (2d Cir.1995).

[¶ 18] To maintain continuity, Congress charged the Attorney General, or his designee, with the responsibility of collecting fines, assessments and restitution. 18 U.S.C. § 3612(c). The FDCPA was enacted, in part, to provide a uniform, nationwide mechanism for government enforcement of court-ordered monetary obligations.

> Under the [FDCPA], the Government would be able to collect civil, criminal and tax judgments through such means as attachments, garnishments, judgment liens and sales, confess judgments and restraining orders in all judicial districts.

135 Cong. Rec. S289–01, 1989 WL 190570 at *S406 (Jan. 25, 1989) (statem. of Sen. Biden). Had Congress intended for the Government to be bound by and limited to the installment payments set by a court, even after the court's supervision and criminal jurisdiction expired, there would be no need for the Government to have these collection methods at its disposal for use to enforce criminal debts.

[¶ 19] It is important to keep in mind that a court ordered payment schedule is an enforcement remedy that operates *in personam* against a defendant. If the defendant wilfully fails to comply with such a schedule, a court may find him in default, revoke supervised release or hold him in contempt and resentence under §§ 3613A and 3614. Satisfying the schedule thus permits the defendant to remain in good stead with the court and avoid further sanctions.

[¶ 20] By contrast, the post-judgment remedies available to the Government operate *in rem* against a defendant's property. If the chosen remedy, for example, a garnishment, should fail (because another creditor garnished the targeted asset first), the defendant faces no other sanction.

[¶ 21] Defendant's claim, that the Government is forever beholden to a court ordered payment plan, not only is without merit, but also makes no practical sense. Indeed, it is wholly unrealistic to assume that a defendant's ability to make installment payments would not change during the 20–year limitations period for the collection of debts, especially when this period does not even begin to run until the defendant has completed the custody portion of his sentence.

B.

[¶ 22] Aside from this, there was no "agreement" in November, 2006 that prohibited the Government from seeking to obtain more than $300 per month from Defendant. The Government's November 13, 2006 letter plainly indicates that the Government was willing to accept $300 per month *until* he obtained full-time employment. When the Government discovered that Defendant had secured employment in which he was being paid a substantial wage, it sought to collect additional monies, above and beyond the $300 per month Defendant had been paying. Defendant did not disclose his employment or provide any supplemental information concerning his financial or employment status to the Government. In all probability, Defendant knew that if he did so, the Government would want him to pay more than $300 each month, as the November 9, 2006 letter from his counsel suggests. The Government was within its right to garnish Defendant's wages given the upward changes that had occurred in Defendant's income and his failure to disclose these changes to the Government.

## V.

[¶ 23] Regardless, Defendant's motion to quash the garnishment writ is untimely. The FDCPA afforded him 20 days from the notice of the writ to move to quash the garnishment. 28 U.S.C. § 3202(d). That time expired in June, 2007, well before he filed his motion in late August, 2007. The tardy motion, therefore, need not even be passed on.

## VI.

[¶ 24] In any event, consideration of Defendant's financial situation and/or the equities of the case are not subject to or within the purview of a garnishment hearing. § 3202(d) limits the issues at such a hearing to determining the probable validity of any claim of exemption and/or default judgment, and the Government's compliance with statutory requirements. *See United States v. Smith,* 88 Fed.Appx. 981 (8th Cir.2004). None of these issues were raised by Defendant in his motion. As a consequence, Defendant is foreclosed from raising, much less prevailing on, either or both of the defenses contained in the motion. *See United States v. Bringhurst,* No. 1–01–CR–35TS, 2007 WL 2903761 at **1–2 (D.Utah Oct. 3, 2007) (denying the defendant's request to quash the writ of garnishment because the request did not set forth any of the grounds listed in § 3202(d)); *United States v. Mahar,* 42 F.3d 1389, 1994 WL 657089 at *1 (6th Cir. Nov. 21, 1994) (holding that the defendant's "argument that he is unable to afford the amount of the garnishment is not a permissible defense to raise under 28 U.S.C. § 3202(d)"): *see also United States v. Pugh,* 75 Fed.Appx. 546, 547 (8th Cir. 2003) (limiting the issue on remand "to

what payments [the defendant] has made on the restitution debt, any exemptions to which he might be entitled, and the government's compliance with [the] FDCPA; the hearing will not be an opportunity for [the defendant] to challenge the validity of the underlying conviction or restitution obligation"); *United States v. Feichtinger,* 172 F.3d 54, 1998 WL 894664 at *1 & n. 1 (7th Cir. Dec. 15, 1998) (observing that "[t]he FDC[P]A severely restricts the issues that a debtor may raise at a hearing" and that the only two issues the debtor could have raised in the case concern exemptions and compliance with the statutory requirements because the writ issued was not one to enforce a default judgment); *United States v. Greenberg,* No. Misc. 1–06MC55, 2006 WL 3791373 at *1 (D.Vt. Dec. 22, 2006) (the gravaman of the defendant's motion to quash the writ of continuing garnishment, namely, that his restitution obligation had expired, did "not implicate any of the bases for granting [a § 3202(d) ] hearing"). If Congress wanted to allow for the equities present in each case to be delved into at a § 3202(d) hearing, then it most assuredly would have said so and expanded the scope of the statute accordingly.[3]

## VII.

[¶ 25] Yet even if the garnishment writ is subject to challenge, it appears nonetheless that the writ was properly issued. § 3205(c)(1) states in relevant part that "[i]f the court determines that the requirements of [§ 3205] are met, the court *shall issue* an appropriate writ of garnishment." (emphasis added). Thus, while the court has discretion in determin-

---

**3.** While a defendant's "alleged inability to pay is not a sufficient reason to quash the [w]rit ... courts that have considered the issue have held that a [c]ourt may consider a [d]efendant's inability to pay under 28 U.S.C. § 3013." *Bringhurst,* 2007 WL 2903761 at *2

& n. 20. Defendant has not moved or otherwise requested that this be done and the Court declines to consider such a defense, under § 3013, *sua sponte* based on the procedural posture of the case and the current state of the record.

ing whether the procedural requirements of § 3205 have been complied with, once compliance has been determined, a writ should ordinarily be issued.

[¶ 26] The court does, however, have discretion to limit the Government's enforcement remedies under 28 U.S.C. § 3013. *See United States v. Ogburn*, 499 F.Supp.2d 28, 30–32 (D.D.C.2007); *see also United States v. Mayes*, No. CIV 06–4060, 2007 WL 3001670 at *1 (D.S.D. Oct. 10, 2007). § 3013 provides as follows:

> The court may at any time on its own initiative or the motion of any interested person, and after such notice as it may require, make an order denying, limiting, conditioning, regulating, extending, or modifying the use of any enforcement procedure under this chapter [28 U.S.C. § 3001 *et seq.*].

One member of Congress had this to say about what § 3013 was intended to accomplish:

> The bill acknowledges that important role played by the court in supervising the enforcement process by expressly recognizing the court's authority to enter and modify protective orders on its own or otherwise. This broad and general authority to fashion an appropriate relief eliminates the need to anticipate all possible abuses or problems. We fully expect that the United States will not attempt to circumvent the exempt property rights of the debtor. We fully expect that the Government will generally seek to satisfy a judgment in a way that will minimize the adverse impact on the debtor and that will not unnecessarily disrupt the debtor's affairs. And we fully expect that the debtor will normally be able to elect which property should be applied to the satisfaction of his debt. But if the United States were ever to attempt to abuse its power under this bill, the courts can steadfastly protect the debtor.

136 Cong. Rec. H13288–02, 1990 WL 168500 at *H13289 (Oct. 27, 1990) (statem. of Rep. Brooks).

[¶ 27] § 3013 is based on New York Civil Practice Law and Rules (CPLR) 5240. *See Cablevision Systems Corp. v. 45 Midland Enterprises, Inc.,* 858 F.Supp. 42, 43 (S.D.N.Y.1994). The purpose of the CPLR 5240 is to "prevent unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice to any person or the court." *Paz v. Long Island R.R.,* 241 A.D.2d 486, 487, 661 N.Y.S.2d 20 (N.Y.App.Div.1997).

[¶ 28] § 3013 provides a defendant with a layer of protection against abuse or potential abuse by the Government. The statute prevents, for example, the Government from issuing multiple writs of garnishment against exempt property (and thereby disrupt the defendant's financial affairs) or from foreclosing on property to collect a minor debt, when utilizing a wage withholding may be a more appropriate and expedient remedy.

[¶ 29] Any enforcement remedy, be it a garnishment, execution or wage withholding, is bound to have an adverse impact on a defendant. The Government should always attempt to minimize the impact to the defendant, as much as possible, when deciding what remedy to utilize. That does not mean, however, that the Government must eliminate the impact altogether. Instead, it must act in a reasonable and responsible manner, based on the situation at hand.

### VIII.

[¶ 30] As of August 29, 2007, Defendant still owed in excess of $123,000 on his criminal Judgment. In the 123–month time period between March, 1997 and June, 2007, Defendant paid $24,227.32, slightly less than $2,4000 per annum. For years, he consistently missed payments

and failed to keep the Government abreast of changes in his financial situation. At this rate, it is quite likely that the taxpayers will have to "absorb" the vast bulk of Defendant's debt when the limitations period expires.

[¶ 31] Given the circumstances present and Defendant's own conduct, the Government's use of a writ of garnishment was justified and not an abuse of its enforcement power. There being no factual or legal basis to quash the writ of garnishment, Defendant's motion, should, per force, be denied.

### IX.

[¶ 32] Based on the foregoing discussion, the record now before the Court, it is hereby

[¶ 33] RECOMMENDED that the Government's Objection to Garnishee's Answer, Docket No. 124, be sustained. It is further

[¶ 34] RECOMMENDED that Defendant's Motion to Quash Garnishment, Docket No. 125, be denied.

Dated this 28th day of November, 2007, at Pierre, South Dakota.