# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-CP-01621-COA

**ARMSTRONG KNIGHT A/K/A ARMSTRONG**       **APPELLANT**
**JACOB KNIGHT A/K/A A.J. KNIGHT**

**v.**

**STATE OF MISSISSIPPI**       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/09/2013 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ARMSTRONG KNIGHT (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: BARBARA WAKELAND BYRD |
| NATURE OF THE CASE: | CIVIL - POSTCONVICTION RELIEF |
| TRIAL COURT DISPOSITION: | MOTION FOR POSTCONVICTION RELIEF DENIED |
| DISPOSITION: | AFFIRMED - 04/26/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**GREENLEE, J., FOR THE COURT:**

¶1.    In 2003, Armstrong Knight negotiated a plea deal to avoid a murder conviction and the possibility of spending the rest of his life in prison. He pled guilty to manslaughter, two counts of felon in possession of a firearm, and one count of carrying a concealed weapon after a felony conviction. His combined sentences essentially operated as thirty years in the custody of the Mississippi Department of Corrections (MDOC). Approximately ten years later, he claimed that one of his convictions for felon in possession of a firearm must be vacated because he has been subjected to double jeopardy. But we find that Knight waived

the issue through his negotiated plea deal. Accordingly, we affirm the Harrison County Circuit Court's judgment denying Knight's motion for postconviction relief (PCR).

## FACTS AND PROCEDURAL HISTORY

¶2. In 2003, Knight was facing a murder charge. If convicted, he would have received a mandatory life sentence. Miss. Code Ann. § 97-3-21 (Rev. 2006). He would not have been eligible for parole. Miss. Code Ann. § 47-7-3(1)(g) (Supp. 2006). And the prosecution had been building its case.

¶3. The prosecution's theory was that while beginning his return trip to California, Knight had emptied two firearms into a mobile home, killing Charles Dawson in the process. When authorities first investigated the scene, Dawson's wife implicated Knight based on his ongoing dispute with someone other than the victim. A pistol had been recovered at the scene, and it had been identified as Knight's. When he was arrested in Texas, Knight had four other firearms, including an SKS semiautomatic rifle. Shell casings recovered at the scene were consistent with those used in the pistol and the SKS.

¶4. Additionally, Knight's sister had been charged as an accessory to murder, but she took a plea deal to a lesser charge as an accessory after the fact. Her plea deal was contingent on her testimony against Knight, which would place him directly at the scene. And the circuit court had denied Knight's motion to suppress the firearms seized when he was arrested. Considering the apparent strength of the prosecution's case, Knight chose to take a plea deal.

¶5. Knight agreed to plead guilty to manslaughter and three other charges. He filed a

2

guilty-plea petition to that effect. In furtherance of the plea agreement, Knight also filed a "waiver of indictment and agreement to prosecution by information." He attached a bill of information specifically charging him with felon in possession of a firearm – the SKS. He then filed a second waiver of indictment, and attached a bill of information charging him with possession of a shotgun that had been recovered when he was arrested. Finally, he took similar steps to plead guilty to carrying a concealed weapon – the pistol – after a felony conviction.

¶6.     In exchange, the prosecution agreed to recommend sentences of twenty years for manslaughter, two and one-half years for each count of felon in possession of a firearm, and five years for carrying a concealed weapon after a felony conviction. The sentences would all run consecutively, equivalent to a combined thirty-year sentence. The prosecution fulfilled its end of the bargain. The circuit court accepted Knight's guilty pleas and sentenced Knight consistent with the prosecution's recommendation.

¶7.     Knight subsequently filed an unsuccessful PCR motion. *Knight v. State*, 983 So. 2d 348, 350 (¶3) (Miss. Ct. App. 2008). On appeal, this Court vacated Knight's conviction for carrying a concealed weapon after a felony conviction. *Id*. at 352 (¶¶13-14). But there was no merit to Knight's claim that he had not been previously convicted of a felony. *Id*. at 354 (¶24). And there was no merit to his claim that he received ineffective assistance of counsel when he pled guilty to two counts of felon in possession of a firearm. *Id*. at (¶25).

¶8.     In February 2013, Knight filed another PCR motion. In his second PCR motion, he

claimed his two convictions for felon in possession of a firearm violate the prohibition against double jeopardy. According to Knight, he can only be convicted once for simultaneous possession of multiple firearms. Knight reasoned that because the SKS and the shotgun were both in the same U-Haul when he was arrested, he had been punished twice for the same offense, so one of his convictions had to be vacated. The circuit court found that Knight's 2013 PCR motion was time-barred and successive-writ barred. Notwithstanding the procedural bars, in a thorough and detailed analysis, the circuit court found that Knight's claim had no merit. Accordingly, the circuit court denied Knight's 2013 PCR motion. Knight appeals and reiterates his double-jeopardy claim.

## STANDARD OF REVIEW

¶9. We will not disturb a circuit court's decision to deny a PCR motion unless the decision was clearly erroneous. *Id*. at 350 (¶4). However, a double-jeopardy claim is a question of law, which we review de novo. *Brown v. State*, 731 So. 2d 595, 598 (¶6) (Miss. 1999). Statutory interpretation is also a matter of law. *Lewis v. Hinds Cty. Circuit Court*, 158 So. 3d 1117, 1120 (¶6) (Miss. 2015).

## ANALYSIS

¶10. The circuit court found that Knight's double-jeopardy claim was both time-barred and procedurally barred as a successive writ. Without question, Knight filed his 2013 PCR motion well beyond the three-year statutory deadline that began to run when he entered his guilty pleas in 2003. *See* Miss. Code Ann. § 99-39-5(2) (Rev. 2015). And Knight's

4

unsuccessful 2006 PCR motion would generally render his 2013 PCR motion barred as a successive writ. *See* Miss. Code Ann. § 99-39-23(6) (Rev. 2015).

¶11. But in *Rowland v. State*, 42 So. 3d 503, 508 (¶15) (Miss. 2010), the Mississippi Supreme Court held that double-jeopardy claims "are excepted from the procedural bars" in the Uniform Postconviction Collateral Relief Act. This is an absolute matter not subject to an appellate court's discretion. *Id*. at 507 (¶12). The supreme court has also "held that neither the common law nor our own constitutional law applies the doctrine of res judicata to constitutional claims." *Smith v. State*, 149 So. 3d 1027, 1032 (¶11) (Miss. 2014). Consequently, Knight's current claim is not barred by time or the fact that he raised it in a successive PCR motion. But whether Knight waived it by pleading guilty is a more complicated issue.

¶12. "The most basic rights of criminal defendants are . . . subject to waiver." *Peretz v. United States*, 501 U.S. 923, 936 (1991). "[T]he Constitution affords no protection to a defendant who waives these fundamental rights." *Id*. at 937. Broadly speaking, the United States Supreme Court has further held:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of his constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). This broad principle has been extended to numerous constitutional rights. More specifically, a valid guilty plea operates as a waiver

of one's rights related to a speedy trial, refusal of self-incrimination, confrontation of accusers, cross-examination of witnesses, a jury trial, and the State's obligation to prove guilt beyond a reasonable doubt. *See Anderson v. State*, 577 So. 2d 390, 391 (Miss. 1991) (regarding waiver of the right to a speedy trial); *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989).

¶13. Characterizing a constitutional right as "fundamental" does not mean it is impossible to waive it by pleading guilty. Along with double jeopardy, three other claims have been included in the "fundamental" label: (1) illegally harsh sentencing; (2) denial of due process during sentencing, and (3) ex post facto claims. *Boyd v. State*, 155 So. 3d 914, 918 (¶13) (Miss. Ct. App. 2014). The Mississippi Supreme Court has held that an ex post facto claim may be waived through a negotiated guilty plea. *See Twillie v. State*, 892 So. 2d 187, 190 (¶11) (Miss. 2004). As our supreme court has stated:

> If a defendant in a criminal case can waive the constitutional right to remain silent and give an incriminating confession [that] eventually places [him] on death row, it logically follows that a defendant . . . can waive his ex post facto rights and knowingly enter into an agreement to be sentenced to life without parole in order to avoid the death penalty.

*Id*. And under certain circumstances, the United States Supreme Court has held that a double-jeopardy claim may be waived through a guilty plea. *United States v. Broce*, 488 U.S. 563, 573 (1989).

¶14. Noting previous decisions to the contrary under different circumstances, the *Broce* Court reiterated that a guilty plea "does not waive a claim that – judged on its face – the

6

charge is one [that] the State may not constitutionally prosecute." *Id*. at 575. But prisoners who plead guilty to "indictments that on their face described separate" crimes essentially waive the right to contradict "the admissions inherent in their guilty pleas." *Id*. "[C]onscious waiver" of double jeopardy is not required. *Id*. at 573. "Relinquishment derives not from any inquiry into a defendant's subjective understanding of the range of potential defenses, [including one based on double jeopardy,] but from the admissions necessarily made upon entry of a voluntary plea of guilty." *Id*. at 573-74.

¶15.    So far, our supreme court has not addressed circumstances in which a guilty plea operated as a waiver of a double-jeopardy claim. *See Matlock v. State*, 732 So. 2d 168, 171 (¶11) (Miss. 1999); *Rush v. State*, 749 So. 2d 1024, 1027 (¶9) (Miss. 1999). The fact remains that the waiver question turns on the nature of the double-jeopardy claim. Those involving charges that are facially duplicative of an earlier crime are not waived by pleading guilty. *Menna v. New York*, 423 U.S. 61, 62 (1975). The same is true with claims involving merged crimes – a "constitutional infirmity in the proceedings" that impacts the "State's power to bring any indictment at all." *Blackledge v. Perry*, 417 U.S. 21, 30 (1975). But a guilty plea does waive a double-jeopardy claim that cannot be proven without contradicting the indictments under which a prisoner pled guilty. *Broce*, 488 U.S. at 576.

¶16.    Knight pled guilty to two separate bills of information. In each separate waiver of indictment, Knight demanded to be prosecuted for a different unindicted offense. One bill of information charged him with possession of the SKS, and the other charged him with

possession of a shotgun. On their face, the two bills of information describe separate crimes. So per *Broce*, Knight waived his current double-jeopardy claim by pleading guilty to the charges.

¶17.    What is more, Knight benefitted from his guilty pleas because he avoided the possibility of being convicted of murder and sentenced to life in MDOC custody without eligibility for parole. "[T]he Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice." *Ricketts v. Adamson*, 483 U.S. 1, 11 (1987). In *Novaton v. State*, 634 So. 2d 607, 608 (Fla. 1994), a prisoner argued that although he had negotiated a plea agreement to avoid the possibility of a life sentence without the possibility of parole, he experienced double jeopardy based on two of the charges. Relying on *Broce*, the Florida Supreme Court held that because the prisoner "entered into a bargained plea with the State, . . . [he] waived any double jeopardy claim that may affect either his convictions or his sentences . . . ." *Id*. at 609.

¶18.    Although *Novaton* is not binding, we find that its reasoning is persuasive; particularly given that Knight seeks to selectively dismantle the plea agreement from which he benefitted. He does not ask to withdraw his guilty plea to manslaughter, but vacating one of his convictions for felon in possession of a firearm would require vacating all of his guilty pleas under the agreement. In *Fuselier v. State*, 654 So. 2d 519, 522 (Miss. 1995), the supreme court held that a prisoner experienced double jeopardy because he had pled guilty to felony murder and the underlying felony. The *Fuselier* court vacated both convictions, because the

8

prisoner "should not be allowed to benefit from an invalid plea bargain" that the State entered in good faith. *Id*. at 523. In other words, the proper resolution was to put "both the State and [the prisoner] in the same position they were in before the plea bargain was made." *Id*. Knight does not seek to return to that position.

¶19. Even if Knight had not waived his claim by pleading guilty, we find it has no merit. Article 3, Section 22 of the Mississippi Constitution provides that "[n]o person's life or liberty shall be twice placed in jeopardy for the same offense[.]" The prohibition against double jeopardy "assures three separate protections," but the one that applies here is the "protection from multiple punishments for the same offense." *See Graves v. State*, 969 So. 2d 845, 847 (¶7) (Miss. 2007) (quoting *United States v. Dixon*, 509 U.S. 688, 695-96 (1993)).

> To determine whether double-jeopardy protections apply, we look to the "same-elements" test prescribed by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The *Blockburger* test instructs us to determine whether each offense contains an element not present in the other; if not, they are labeled the same offense for double-jeopardy purposes, and successive prosecutions and/or punishments are constitutionally barred.

*Graves*, 969 So. 2d at 847 (¶8). Additionally, "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Watkins v. State*, 101 So. 3d 628, 632 (¶12) (Miss. 2012).

¶20. The statute at issue provides that it is illegal for "any person who has been convicted of a felony . . . to possess any firearm . . . ." Miss. Code Ann. § 97-37-5(1) (Rev. 2014). According to Knight, because the statute is ambiguous as to whether he can be convicted

9

once or more than once for simultaneously possessing multiple firearms, we must apply the most lenient interpretation. Our supreme court has never found double jeopardy in similar circumstances, or interpreted the statute as Knight suggests. The supreme court has most recently described the issue as "unsettled and unclear." *Green v. State*, 183 So. 3d 28, 30 (¶5) (Miss. 2016) (declining to conduct a plain-error review of a double-jeopardy claim based on multiple convictions for simultaneous possession of firearms). But there are numerous Mississippi cases in which a felon had been convicted of multiple offenses related to possession of multiple firearms. *Id*. at 31 (¶7) (collecting cases).

¶21.    Still, Knight's position is not unprecedented. Although it may seem like a semantic distinction without a real difference, the question turns on the usage of "any firearm" instead of "a firearm." In *Bell v. United States*, 349 U.S. 81, 82-83 (1955), the United States Supreme Court held that a federal statute prohibiting the transportation of "any woman . . . for the purpose of prostitution" was ambiguous regarding the allowable "unit of prosecution." In other words, the Supreme Court found that it was ambiguous whether Congress intended for one or more than one conviction to result from simultaneously transporting multiple women "for the purpose of prostitution." *Id*. The Supreme Court disclaimed the implication that "language used in criminal statutes should not be read with the saving grace of common sense" or "cast in technical language." *Id*. at 83. Even so, the Supreme Court held that "if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into

10

multiple offenses . . . ." *Id*. at 84.

¶22.    Based on *Bell*, federal circuit courts have unanimously found that 18 U.S.C. § 922(g)(1) (2012), which provides that it is unlawful for a felon to ship, possess, or receive "any firearm" through interstate commerce, is ambiguous regarding the allowable "unit of prosecution."[1] Accordingly, all federal circuits have held that a felon may only be convicted once for simultaneous possession of multiple firearms.  Other states have reached similar conclusions based on the difference between "a firearm" and "any firearm."  Florida and North Carolina have interpreted their comparable statutes prohibiting possession of "any firearm" to mean that only one conviction is permissible for simultaneous possession of multiple firearms.  *Hill v. State*, 711 So. 2d 1221, 1224-25 (Fla. Dist. Ct. App. 1998); *State v. Garris*, 663 S.E.2d 340, 348 (N.C. Ct. App. 2008).  But state statutes prohibiting possession of "a firearm" or "an offensive weapon" have been interpreted to allow multiple convictions.  *Taylor v. State*, 929 N.E.2d 912, 922 (Ind. Ct. App. 2010); *State v. Kidd*, 562 N.W.2d 764, 766 (Iowa 1997); *State v. Lindsey*, 583 So. 2d 1200, 1204 (La. Ct. App. 1991); *State v. Stratton*, 567 A.2d 986, 989 (N.H. 1989).

---

[1]    *United States v. Kennedy*, 682 F.3d 244, 255 (3d Cir. 2012); *United States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006); *United States v. Buchmeier*, 255 F.3d 415, 422 (7th Cir. 2001); *United States v. Adams*, 214 F.3d 724, 728 (6th Cir. 2000); *United States v. Verrecchia*, 196 F.3d 294, 298 (1st Cir. 1999); *United States v. Dunford*, 148 F.3d 385, 390 (4th Cir. 1998); *United States v. Cunningham*, 145 F.3d 1385, 1398 (D.C. Cir. 1998); *United States v. Hutching*, 75 F.3d 1453, 1460 (10th Cir. 1996); *United States v. Berry*, 977 F.2d 915, 920 (5th Cir. 1992); *United States v. Szalkiewicz*, 944 F.2d 653, 654 (9th Cir. 1991); *United States v. Grinkiewicz*, 873 F.2d 253, 255 (11th Cir. 1989); *United States v. Pelusio*, 725 F.2d 161, 169 (2d Cir. 1983).

¶23. But even if we were to find that Knight's interpretation was correct, it would not end the analysis. "[S]imultaneous possession of multiple firearms generally constitutes only one offense unless there is evidence that [they] were stored in different places or acquired at different times." *Hutching*, 75 F.3d at 1460. Whether firearms were stored separately is a question of fact. *Cunningham*, 145 F.3d at 1399. "What matters is the defendant's course of treatment of the firearms, which may not be viewed in a frozen, momentary state immediately prior to the seizure." *Kennedy*, 682 F.3d at 255-56.

¶24. Multiple convictions have been upheld when two different firearms were recovered in two different vehicles. *Hutching*, 75 F.3d at 1460; *Kennedy*, 682 F.3d at 256. "The scattered locations of the guns constituted separate storages that permitted possession of each firearm to constitute a separate offense." *Hutching*, 75 F.3d at 1460. And in *Adams*, 214 F.3d at 727, the defendant had been apprehended with one pistol, and another had been recovered in the area where the defendant jumped out of a truck to flee from law-enforcement officers. Both convictions were permissible because the pistols had been recovered from different places. *Id.* at 728.

¶25. The following matters were all discussed during the guilty-plea hearing or made a part of the record. Because he had previously been convicted of a felony in California, Knight essentially used his sister as a broker to buy four firearms. Later, Knight's sister bought a van for their return trip to California, and his girlfriend rented a U-Haul trailer. Before they left Harrison County, Knight told his sister to stop the van. Knight had the SKS in the van

12

with him, and the shotgun was in the trailer. Armed with the SKS and a pistol, Knight walked to a nearby mobile home and emptied both magazines into it, killing Dawson. Knight then went back to the van and put the SKS in the trailer with the shotgun. Knight, his sister, and his girlfriend were later arrested in Texas. Thus, there was evidence that Knight stored or possessed the SKS and the shotgun separately at times. So even if we adopted Knight's interpretation of the statute and the allowable unit of prosecution for simultaneous possession of multiple firearms, we would still find that his two separate guilty pleas do not result in double jeopardy. Accordingly, there is no merit to Knight's claim.

¶26. **THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT DENYING THE MOTION FOR POSTCONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HARRISON COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, FAIR, JAMES AND WILSON, JJ., CONCUR. BARNES, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**