# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CP-01785-COA

**EDMOND DENTON REEVES A/K/A EDMOND D. REEVES**                    APPELLANT

**v.**

**STATE OF MISSISSIPPI**                    APPELLEE

DATE OF JUDGMENT:                    11/17/2016
TRIAL JUDGE:                    HON. DALE HARKEY
COURT FROM WHICH APPEALED:                    GEORGE COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:                    EDMOND DENTON REEVES (PRO SE)
ATTORNEY FOR APPELLEE:                    OFFICE OF THE ATTORNEY GENERAL
                    BY: ABBIE E. KOONCE
NATURE OF THE CASE:                    CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                    AFFIRMED: 03/27/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.    Edmond Denton Reeves appeals the dismissal of his motion for post-conviction collateral relief (PCCR).  We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

¶2.    Reeves was indicted on the charges of murder, first-degree arson, and possession of a weapon by a convicted felon.  The circuit court ordered a mental evaluation to determine Reeves's sanity and competency to stand trial.  Dr. W. Criss Lott evaluated Reeves on May 14, 2013, and subsequently issued a report.

¶3.    Regarding competency, Dr. Lott opined, "Reeves has sufficient present ability to

consult with his attorney with a reasonable degree of rational understanding in preparation of his defense, and he has a rational as well as factual understanding of the nature and object of the legal proceedings against him." Additionally, regarding sanity, Dr. Lott opined that although "Reeves suffers from an addictive disorder and symptoms of mania and paranoia, he would have known the nature and quality of his alleged actions." Dr. Lott further opined, "Reeves would have known the difference between right and wrong at the time of the alleged offenses."

¶4. A competency hearing was subsequently held during which Dr. Lott's findings and opinions were read into the record. Dr. Lott's evaluation report was marked as an exhibit to the hearing and admitted into evidence.

¶5. On October 17, 2013, Reeves signed a "waiver of indictment and agreement to prosecution by information" on the charge of second-degree murder. Thereafter, Reeves entered a plea of guilty to second-degree murder, first-degree arson, and possession of a weapon by a convicted felon. During the plea hearing, the State presented the basis for the charges:

> Your Honor, . . . the defendant is charged with second-degree murder, having alleged on July 9, 2012, in George County, Mississippi, at 158 Havard Road[,] the defendant took two weapons, a shotgun[,] and shot Jarvis Reeves, his father, in the chest[,] and took a rifle and shot his father in the head. His father died in the bedroom of that home.
>
> In . . . Count II, arson, . . . the defendant is charged with arson, first degree, an occupied dwelling house. We know the fire started in the bedroom and burned the body of the victim[,] too.
>
> In Count III, possession of a weapon by a convicted felon[,] in that on July 9, 2012, he possessed as a convicted felon a shotgun and a Marlin rifle when he

2

had previously been convicted in the State of Louisiana for vehicular manslaughter.

¶6.     The circuit court subsequently asked Reeves to state in his own words what happened. Reeves responded, "I shot my father and killed him.  I set the trailer on fire and I went to where my wife was and I told her what I'd done."  Reeves advised the circuit court that although he and his attorney had discussed all possible defenses to the crimes, he "[had] no defense."  Reeves further advised the circuit court that he was pleading guilty "because [he is] guilty of these crimes."

¶7.     On October 18, 2013, Reeves was sentenced to forty years in the custody of the Mississippi Department of Corrections (MDOC), with fifteen years suspended, followed by five years post-release supervision on the second-degree murder charge; fifteen years for the first-degree arson charge; and ten years for possession of a weapon as a convicted felon.  The sentences were ordered to run concurrently with each other.

¶8.     On October 16, 2016, Reeves filed a motion for PCCR, which the circuit court dismissed.  Reeves now appeals and argues: (1) he was deprived of due process because he did not receive an initial appearance or a preliminary hearing, (2) he received ineffective assistance of counsel, (3) he was not served with the indictment and capias, (4) he should not have been allowed to plead guilty to second-degree murder, and (5) the circuit court should have ensured that a court reporter was present at the hearings.

STANDARD OF REVIEW

¶9.     We review a circuit court's denial or dismissal of a PCCR motion for abuse of discretion.  *Wallace v. State*, 180 So. 3d 767, 769 (¶7) (Miss. Ct. App. 2015).  However,

3

questions of law are reviewed de novo. *Id.*

ANALYSIS

I.      *Due Process*

¶10.    Reeves first claims he was deprived of due process since he did not receive an initial appearance or a preliminary hearing. However, the entry of a valid guilty plea waives the right to an initial appearance and a preliminary hearing. *Battaya v. State*, 861 So. 2d 364, 366 (¶¶5-8) (Miss. Ct. App. 2003).

¶11.    Here, Reeves does not argue that his guilty pleas were invalid. Moreover, the plea petition and the plea-hearing transcript both show Reeves was advised of and understood his constitutional rights, the nature of the charges against him, the minimum and maximum sentences for each charge, and the consequences of his guilty pleas. Additionally, Reeves represented to the circuit court that his decision to plead guilty was not based on threats, coercion, or any promises made to him.

¶12.    Because the record shows Reeves entered valid guilty pleas, his right to an initial appearance and a preliminary hearing was waived. Accordingly, his due-process claim fails.

II.     *Ineffective Assistance of Counsel*

¶13.    Reeves next claims he received ineffective assistance of counsel. To prove ineffective assistance of counsel, Reeves must show: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced the defense. *Liddell v. State*, 7 So. 3d 217, 219 (¶6) (Miss. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional

4

assistance." *Strickland*, 466 U.S. at 689. To overcome this presumption, Reeves "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

¶14. Reeves asserts "his attorney did not make any arguments to the circuit court regarding [his] mental status and did not refute Dr. Criss Lott's expert opinion." However, the record shows there was nothing to argue or refute. Dr. Lott's opinions and findings were read into the record. In response, Reeves's counsel advised the circuit court that he "never had any issues with [Reeves] as far as competency," he "had no problems communicating with [Reeves]," and Reeves was always "cognitive" and "knowledgeable of what [they were] doing." Thus, based on counsel's observations of and experience with Reeves, as well as Dr. Lott's professional findings, there was no reason for counsel to argue over Reeves's mental status or refute Dr. Lott's opinions. Moreover, Reeves was given the opportunity to respond to Dr. Lott's report and findings, but Reeves declined.

¶15. Reeves further asserts his attorney was not "loyal" to him. Specifically, Reeves argues his trial counsel "worked with the prosecution against the interest of Reeves" and waived his constitutional right to a speedy trial. However, the plea-hearing transcript shows Reeves was advised and understood that by pleading guilty, he was waiving his right to a speedy trial. *See Burch v. State*, 929 So. 2d 394, 396-97 (¶6) (Miss. Ct. App. 2006) (valid guilty plea operates as a waiver of the right to a speedy trial).

¶16. Additionally, both the plea petition and the plea-hearing transcript show that Reeves was satisfied with his attorney. "Solemn declarations in open court carry a strong

5

presumption of verity." *Watson v. State*, 100 So. 3d 1034, 1038 (¶10) (Miss. Ct. App. 2012).

¶17. Overall, Reeves has failed to show that his counsel's performance was deficient and that the alleged deficient performance prejudiced his defense. Accordingly, his ineffective-assistance-of-counsel claim fails.

### III. *Service of Indictment and Capias*

¶18. Reeves next claims he was never served with a copy of the indictment and capias. However, such claim "fails to meet one of the waiver exceptions to a guilty plea." *Morris v. State*, 125 So. 3d 79, 80 (¶5) (Miss. Ct. App. 2013) (citing *Jefferson v. State*, 556 So. 2d 1016, 1019 (Miss. 1989)). Regardless, during his plea hearing, Reeves advised the circuit court that he had received a copy of his indictment. Accordingly, we find this issue is meritless.

### IV. *Ex Post Facto Claim*

¶19. After the subject crimes occurred, Mississippi Code Annotated section 97-3-19 (Rev. 2017) was amended to create the crime of second-degree murder. Reeves claims the circuit court erred in accepting his guilty plea to second-degree murder "when the statute was enacted after the alleged crime."

¶20. "An ex post facto law is one [that] creates a new offense or changes the punishment, to the detriment of the accused, after the commission of the crime." *Ross v. Epps*, 922 So. 2d 847, 849 (¶5) (Miss. Ct. App. 2006). In *Collins v. Youngblood*, 497 U.S. 37, 43 (1990), the United States Supreme Court held that "[l]egislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." However, "an ex post

6

facto claim may be waived through a negotiated guilty plea." *Knight v. State*, 192 So. 3d 360, 364 (¶13) (Miss. Ct. App. 2016).

¶21. During the plea hearing, the following discussion occurred regarding Reeves's waiver of any ex post facto claim:

> COURT:    Did you discuss that with [your attorney]?
>
> REEVES:   Yes, sir.
>
> COURT:    That any laws passed subsequent to the commission of an offense can't be applied retroactively; do you understand that?
>
> REEVES:   Yes, sir.
>
> COURT:    And you're agreeing to waive that right also?
>
> REEVES:   Yes, sir.

¶22. Additionally, Reeves signed a "waiver of constitutional rights and ex post facto law," which stated that:

> [his attorney] has fully explained to [him] all of his constitutional rights and the issues of ex post facto law as they relate to his charges, and by signing his signature hereto acknowledges that he understands those rights and issues as they apply to his charges, including but not limited to the fact that since this crime occurred, . . . Section 97-3-19 was amended to create the crime of [s]econd[-]degree murder[,] which eliminates the possibility of parole as one who have under the [m]anslaughter statute[,] and [Reeves] expressly waives any and all constitutional rights to object to the imposition of the day for day sentence under the [s]econd[-][d]egree murder statute and accepts a day for day sentence, as mandated in Miss. Code Section 47-7-3, as a result of this plea.

¶23. Our review of the record shows Reeves was advised of and understood his ex post facto rights. Moreover, the record shows Reeves agreed to waive those rights as a result of his guilty plea. Accordingly, his ex post facto claim fails.

## V. Presence of a Court Reporter

¶24. Reeves last claims that a court reporter was not present during his competency and plea hearings. Reeves argues "the [circuit] court erred by dismissing the motion [for PCCR] by asserting that transcripts were reviewed when in fact no transcripts of the proceedings existed." However, the record clearly shows a court reporter was present for both the competency and plea hearings. Indeed, a copy of the transcript from both hearings is included in the record.[1] Thus, this issue is meritless.

## CONCLUSION

¶25. We find no merit to the issues raised on appeal. Thus, we affirm the judgment of the George County Circuit Court.

¶26. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**

---

[1] It appears Reeves's misunderstanding stems from the circuit clerk's letter stating that a court reporter was not present in this case. However, that letter referred to Reeves's PCCR proceedings, not the underlying criminal case.