# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CP-00890-COA

**ARTHUR BLANTON BALL, JR.**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 07/21/2023 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | MARION COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ARTHUR BLANTON BALL JR. (PRO SE) |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED - 12/17/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     In this appeal we are tasked to determine if Arthur Ball's right to be free from Double Jeopardy was violated by his voluntary guilty pleas in two separate counties.  The trial court ruled that his right was not violated.  Because we find Ball waived this argument as a result of his guilty pleas, we affirm the trial court's denial of post-conviction relief.

## PROCEDURAL HISTORY

¶2.     The underlying facts relevant to this appeal are not in dispute.  In September 2018, a grand jury in Claiborne County returned a two-count indictment against Arthur Ball in cause

number 11:18-cr-27THI.[1] The first count was for the possession of stolen firearms, and the second was for the possession of a weapon by a convicted felon.

¶3.    In December of the same year, a Marion County grand jury indicted him in cause number 46:18-cr-227-PH for two separate counts: burglary of a dwelling and possession of a weapon by a felon. From Ball's later pleadings, this burglary was the source of the weapon he was later accused of possessing.

¶4.    In January 2019, Ball plead guilty to a single charge in Claiborne County—the possession of a weapon by a felon. In September 2019, he plead guilty to both burglary and possession of a weapon by a felon in Marion County.

¶5.    After his guilty pleas were entered and after he began serving time, Ball filed a petition for post-conviction relief. He had multiple claims, but the one that survives for review today centered on his argument that he was being twice punished for the same crime.

¶6.    Ball's core theory was that the State was impermissibly prosecuting him twice for possession of the same guns. As Ball himself argued in a handwritten pleading before the trial court:

---

[1] In the order denying Ball's PCR motion, the circuit court stated that it had reviewed the indictment and sentencing order in Ball's Claiborne County case as well as the indictment, plea petition, conviction, sentence, and plea hearing transcript in the Marion County case. These documents were not included in the record on appeal. Unlike appeals from orders summarily dismissing a PCR motion, these documents were not required to be included in the record. *See* MRCP 54(c) ("When a court *summarily* dismisses a motion for post-conviction collateral relief . . . the order must identify the files, records, transcripts, and correspondence the court relied on *and direct that certified copies of those documents be placed in the motion cause number's file*" (emphasis added)). Therefore, if a party wishes to include these materials, they must do so pursuant to Mississippi Rules of Appellate Procedure 10(b)(1)-(2).

The Petitioner contends that possession of these weapons stem from one Burglary Cause #46:18cr227 [(the Marion County case)] that all said weapons was obtained at one time. While the Burglary occurred in Marion County the act of being caught in possession occurs in Claiborne County. Does the State of Mississippi have legal authority to charge Petitioner in every other county or two traveled through between Marion and Claiborne with possession?

¶7. Ball further argued the State could not prosecute him "for possessing the same weapons stemming from obtaining all said weapons at the same time."

¶8. Recognizing the gravity of Ball's claim, the trial court ordered the State to respond to the PCR. The State filed its response. The trial court set an evidentiary hearing and ordered Ball to be transported so he could participate. During the hearing, the trial court heard arguments from both Ball and the State.

¶9. In a written order, the trial court found there was a crucial distinction between the two indictments from the two separate counties: "The firearm Ball pleaded guilty to possessing in Marion County was a Marlin 917V5 rifle, bearing serial number 92636879, which was not the same firearm he pleaded guilty to possessing in Claiborne County."

¶10. So the trial court's view of Ball's claims was "not whether he received the weapons at different times or from different sources, but whether he illegally possessed one firearm in Marion County, and later illegally possessed another firearm when he was stopped and arrested in Claiborne County." The trial court proceeded to reach the merits of Ball's argument. It found that Double Jeopardy was not violated because Ball "was illegally in possession of a firearm in Marion County, and at a different time and location he was illegally in possession of a separate firearm Claiborne County." The trial court denied his request for post-conviction relief, and Ball now appeals.

**DISCUSSION**

¶11.    On appeal, Ball argues the trial court should be reversed because "his Constitutional Rights were violated by way of Double Jeopardy" since "[i]t is well established that the simultaneous, undifferentiated Possession of Multiple Firearms constitutes only one offence[.]" In response, the State argues in part that Ball waived this argument.

¶12.    In 2016, this Court considered how guilty pleas intersected with a subsequent claim of double jeopardy. In that case, a petitioner sought to claw back his guilty plea after pleading "guilty to manslaughter, two counts of felon in possession of a firearm, and one count of carrying a concealed weapon after a felony conviction." *Knight v. State*, 192 So. 3d 360, 362 (¶1) (Miss. Ct. App. 2016). The theory of the State had been that "Knight had emptied two firearms into a mobile home, killing Charles Dawson in the process," and police had found an abandoned pistol at the scene, which "had been identified as Knight's." *Id*. at (¶3). After he was arrested, Knight was found with other firearms, including a rifle that was consistent with "[s]hell casings recovered at the scene[.]" *Id*.

¶13.    After a series of challenges, Knight brought a PCR claim that he had impermissibly plead guilty in violation of his right against double jeopardy. *Id*. at (¶8). The trial court denied relief. *Id*. at 367-68 (¶25). Since "a double-jeopardy claim is a question of law," the issue was "review[ed] de novo." *Id*. at 363 (¶9).

¶14.    As here, the State argued that Knight waived the issue by pleading guilty; at the time, we noted that "our [S]upreme [C]ourt has not addressed circumstances in which a guilty plea operated as a waiver of a double-jeopardy claim." *Id*. at 365 (¶15). We proceeded to review

4

United States Supreme Court decisions on the issue and ascertained two rules. *Id*. at (¶15).

¶15.    As a general point, "The fact remains that the waiver question turns on the nature of the double-jeopardy claim." *Id*. So first, "[t]hose [claims] involving charges that are facially duplicative of an earlier crime are not waived by pleading guilty." *Id*.

¶16.    Conversely, "a guilty plea does waive a double-jeopardy claim that cannot be proven without contradicting the indictments under which a prisoner pled guilty." *Id*. We applied a U.S. Supreme Court decision that "prisoners who plead guilty to 'indictments that on their face described separate crimes' essentially waive the right to contradict 'the admissions inherent in their guilty pleas.'" *Id*. at (¶14) (quoting *United States v. Broce*, 488 U.S. 563, 576 (1989)).

¶17.    Applying those rules to the petitioner, we found double jeopardy had not been violated. *Id*. at (¶16). "Knight pled guilty to two separate bills of information," and "One bill of information charged him with possession of the SKS [rifle], and the other charged him with possession of a shotgun." *Id*. "On their face, the two bills of information describe separate crimes," we concluded. *Id*. As a result, we found that "Knight waived his current double-jeopardy claim by pleading guilty to the charges." *Id*.

¶18.    We subsequently applied these rules from *Broce* and *Knight* in a PCR case where a petitioner claimed he was punished three times for the same act of larceny. "'Just as a defendant who pleads guilty to a single count admits guilt to the specified offense, so too does a defendant who pleads guilty to two counts with facial allegations or distinct offenses concede that he has committed two separate crimes.'" *Hooghe v. State*, 244 So. 3d 81, 86

5

(¶13) (Miss. Ct. App. 2017) (quoting *Broce*, 488 U.S. at 570)).

¶19. The same year, we applied *Broce* and *Knight* again, reasoning that "Conscious waiver [of the right to be free from double jeopardy] is not required because, by pleading guilty, the defendant admits not only to the facts alleged but also to his substantive, legal guilt for the offense charged." *Lowell v. State*, 229 So. 3d 1054, 1056 (¶6) (Miss. Ct. App. 2017); *see also Tallant v. State*, 345 So. 3d 575, 590 (¶42) (Miss. Ct. App. 2021) (applying *Knight* to conclude that "when Tallant pled guilty to the three separate child pornography charges, he waived his right to claim a multiplicitous indictment/double jeopardy claim"); *Jones v. State*, 284 So. 3d 855, 861 (¶18) (Miss. Ct. App. 2019) (finding a petitioner in a PCR case had "waived any double-jeopardy claim upon pleading guilty" because "the charges against [her] are not facially duplicative, and as such, she was properly charged with two distinct crimes").

¶20. Just as in *Knight*, the two indictments featured distinct offenses and distinct allegations that constitute different crimes; namely, that Ball possessed different stolen weapons in different counties. In accord with the U.S. Supreme Court's decision in *Broce* and our prior decisions in *Knight*, *Hooghe*, *Lowell*, *Tallant*, and *Jones*, we find that by pleading guilty, Ball waived his right to later assert a claim that he was placed in double jeopardy by virtue of the two indictments.

## CONCLUSION

¶21. "On appeal, we will affirm a decision of the circuit court where the right result is reached even though we may disagree with the reason for that result." *Mack v. State*, 943 So. 2d 73, 76 (¶7) (Miss. Ct. App. 2006). Due to Ball's waiver of his claim by virtue of his

6

guilty pleas, we affirm the trial court's denial of post-conviction relief.

¶22.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, LAWRENCE, SMITH, EMFINGER AND WEDDLE, JJ., CONCUR. WESTBROOKS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND McDONALD, J.**

**WESTBROOKS, J., SPECIALLY CONCURRING:**

¶23.    I agree that Ball conceded in his appellate brief that his indictments facially alleged two separate firearms were possessed in different locations. I also agree he waived his double jeopardy claim on these specific facts. I write separately because while a PCR petitioner carries the burden of proving entitlement of relief, a couple of issues concern me that would have determined the outcome for me had Ball not conceded.

¶24.    Ball filed his motion for post-conviction collateral relief and raised three issues for the trial court's consideration. At the end of his motion, Ball also requested the appointment of an attorney. The judge summarily dismissed the claims of an involuntary plea and ineffective assistance of counsel. If Ball had not raised a legitimate question regarding double jeopardy, I am confident the court would have summarily denied his motion altogether. Even so, the court ordered an evidentiary hearing.

¶25.    In Ball's initial PCR motion to the trial court, he requested the appointment of counsel, to which the court never made an acknowledgment. "[T]he trial court has discretion to appoint counsel in PCR proceedings where the trial court determines that the petitioner qualifies and displays a need for counsel." *Higginbotham v. State*, 114 So. 3d 9, 17 (¶26) (Miss. Ct. App. 2012) (citing *Unruh v. Puckett*, 716 So. 2d 636, 641 (¶21) (Miss. 1998))

(recognizing the need for appointed counsel existed because the petitioner had limited case materials due to imprisonment in South Dakota and claimed indigent status); *see* Miss. Code Ann. § 99-39-23(1) (Rev. 2020) (stating "the [trial] judge may appoint counsel for a petitioner who qualifies for the appointment of counsel"). Under section 99-39-23(2), when an evidentiary hearing is required, "[t]he hearing shall be conducted as promptly as practicable" while also taking into consideration the "regard for the need of counsel for both parties for adequate time for investigation and preparation."

¶26. In Ball's PCR motion, which Ball signed on April 8, 2021, he stated, "Petitioner respectfully requests that this Honorable Court enter an Order requiring the State to file an Answer or other Pleading as to take any other action as the Judge deems appropriate, *including, but not limited to, the appointment of Counsel.*" (Emphasis added). Ball also stated in his PCR motion, "Petitioner has limited knowledge of law or process to obtain records, copies of documents and is hindered because of incarceration."

¶27. In initially ruling on Ball's PCR motion, the trial court addressed all three issues Ball raised: (1) his right against double jeopardy, (2) ineffective assistance of counsel, and (3) his involuntary plea. The trial court granted the evidentiary hearing on Ball's double jeopardy claim and dismissed the other two claims. However, at no point in the order did the trial court address Ball's request for the appointment of counsel.

¶28. During the hearing, Ball also raised an issue regarding his habitual-offender status. The trial judge agreed that there was a discrepancy and agreed to correct it by writing to MDOC. Prior to that, the trial court had a question regarding sovereignty between the

counties and venue. While the State appropriately addressed the court's question, this legal jargon likely was not understood by Ball. The court welcomed Ball to file a written response on the sovereignty issue—although he was going to rule against him—and when asked if he understood, Ball responded, "Somewhat, your honor." It was not an affirmative response, and the assistance of counsel would have benefitted Ball. Yet, even with this response, the trial judge did not use his discretion to even consider appointing counsel to Ball. In my opinion, the trial court's discretion should be used as an expansive conduit rather than a constrictive one in its decisions leading to a transparent, fair, and just proceeding for all parties.

¶29. As mentioned, Ball made a request for an attorney in his motion. During the hearing, he did not follow up and request one, and the trial court did not address it. The law invites defendants under Mississippi Code Annotated section 99-39-5 (Rev. 2020) to challenge their convictions, but our precedent disaffirms this by narrowing the scope of legal arguments that can be made and failing to guarantee the legal tools needed to make a decent case, let alone a successful one. *See Howell v. State*, 358 So. 3d 613, 616 (¶12) (Miss. 2023) (overruling any precedent that has "held the fundamental-rights exception can apply to the substantive, constitutional bars codified by the Legislature in the [UPCCRA]"). Consider also our supreme court has held that a trial judge does not abuse his discretion for failing to sua sponte appoint an attorney for a PCR motion, even if appointment would have been helpful. *Moore v. State*, 587 So. 2d 1193, 1195-96 (Miss. 1991); *accord Magee v. State*, No. 2023-CP-00008-COA, 2024 WL 3947326, at *4 (¶17) (Miss. Ct. App. Aug. 27, 2024) (citing

9

*Porras v. State*, 365 So. 3d 987, 992 (¶17) (Miss. Ct. App. 2022)) (explaining that PCR motions are considered civil in nature and that "there is no right to appointed counsel in PCR proceedings"). Yes, the petition is a civil filing, but the alignment of civil procedural rules does little to change the impact PCR decisions have on the integrity of the original criminal plea or trial, conviction, and sentence. In reality the petitioner is challenging the criminal process and sentencing. At its core, post-conviction collateral relief is an extension (albeit not a continuation) of a criminal proceeding. Accordingly, I reiterate that a trial judge's discretion should reflect this context.

¶30. Turning to the hearing and the double jeopardy issue, I acknowledge there is no precedent in Mississippi that shifts the burden of establishing an entitlement to relief to the State, and I do not suggest otherwise. My point is not to shift the burden to the State. However, the State *always* has an affirmative duty to advocate responsibly. *Harness v. State*, 58 So. 3d 1, 10 (¶33) (Miss. 2011). A prosecutor for the State acts as a "minister of justice and not simply that of an advocate." Miss. R. Prof. Conduct 3.8 cmt. "It is the duty of the prosecutor to see that nothing but competent evidence is submitted to [a court of law.] 42 Am. Jur., Sec. 20, p. 255." *Sanchez v. State*, 792 So. 2d 286, 291 (¶14) (Miss. Ct. App. 2001) (citing *Hosford v. State*, 525 So. 2d 789, 792 (Miss. 1988)). "A prosecutor also has the responsibility to assure that all of the constitutional and statutory rights of the defendant are protected." *Id*. at (¶15) (citing *Adams v. State*, 202 Miss. 68, 75, 30 So. 2d 593, 596 (1947)).

¶31. At Ball's evidentiary hearing, neither Ball nor the State presented the Marion County

or the Claiborne County indictment to the court to prove that the charges he was facing were, in fact, for two separate guns in different counties. The State gave fictional "illustrations" of the guns Ball was charged with possessing in the separate counties without providing any factual information as to the specificity of the guns. That portion of the hearing between the trial court and counsel for the State reads in the record as follows:

THE COURT:        Now, I agree with that. Let me ask you a few questions to clear it up in my mind. He went into somewhere in this county and got multiple guns?

MR. STEWART:     Yes, Your Honor.

THE COURT:        He subsequently went to Claiborne and he got charged with guns by possession, a singular gun?

MR. STEWART:     Yes, sir.

THE COURT:        Marion County subsequently brought a charge of burglary -- him in possession of a gun while a convicted felon of a separate gun that was taken in that original burglary?

MR. STEWART:     Yes, Your Honor.

THE COURT:        Now, if we use the illustration and this may or may not be true, but he was charged with a .38 over in Claiborne. Over here he was charged with a .22?

MR. STEWART:     Yes, Your Honor.

THE COURT:        That's for illustration purpose anyway. In that event, Matt, I would agree with him, that they would be different guns.

MR. STEWART:     To further illustrate, Your Honor, and so the record can't see this, I'm holding seven pens, okay? He steals all seven pens from a house in Marion County. Ipso Facto he possessed a firearm in Marion County. So Marion

11

County charges this firearm right here. Now, he's still got it when he gets to Claiborne County, he's got all of them, but Claiborne County charges him with a separate one.

THE COURT: That's a distinction that I will concur with.

Again, neither indictment from either county was included in the record on appeal. The State acknowledges in its appellate brief that Ball's indictments were not included in the record presented to this Court, yet the State alleges that the indictments do not facially offend the double jeopardy clause because "all parties agreed that his indictment in Marion County alleged possession of a different firearm than the indictment in Claiborne County."

¶32. I take this opportunity to clarify, with respect to the State's argument, that no trial court may rely *solely* on an alleged agreement among parties when squarely presented with a question of fact central to determining whether the State has convicted and sentenced a person twice for the same offense. "The purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact." *Higginbotham v. State*, 367 So. 3d 200, 206 (¶13) (Miss. Ct. App. 2020) (quoting *Williams v. State*, 752 So. 2d 410, 414 (¶13) (Miss. Ct. App. 1999)). The State's use of an illustration to represent attainable facts demonstrates an unconcerned dereliction of its duty to protect the integrity of the judicial process, which at the bare minimum requires the admission of facts, not an illustration as a substitution.

¶33. In September 2018, a grand jury indicted Ball for being a felon in possession of a firearm in Claiborne County on July 18, 2018. Ball pled guilty to and was sentenced for the charge. Three months later, another grand jury indicted Ball for burglary and being a felon

12

in possession of a firearm in Marion County on July 26, 2018.[2]  Defendants do not always

forfeit their rights to raise claims of double jeopardy by pleading guilty; however, those "who

plead guilty to 'indictments that on their face described separate' crimes essentially waive

the right to contradict 'the admissions inherent in their guilty pleas.'"  *Knight v. State*, 192

So. 3d 360, 365 (¶14) (Miss. Ct. App. 2016) (quoting *United States v. Broce*, 488 U.S. 563,

576 (1989)).

¶34.    In the Marion County Circuit Court's "Final Order to Motion for PCR," which was

submitted to this Court on appeal, the circuit court stated:

> In reaching its decision regarding Ball's double jeopardy claim, the court, in
> addition to reviewing the State's Response and Ball's Response (Reply), also
> reviewed the documents described in its Order disposing of Ball's claims of
> ineffective counsel and involuntary plea (Doc. #8):
>
> **Claiborne County Circuit Court, Cause No. 11:18-cr-027THI**
> Doc. #1:       Indictment
> Doc. #9:       Guilty Plea and Sentencing Order
>
> **Marion County Circuit Court, Cause No. 46:18-cr-227-PH**
> Doc. #1:       Indictment
> Doc. #38:      Petition to Enter Plea of Guilty
> Doc. #39:      Order of Conviction and Sentence
> Doc. #44:      Plea Transcript

The Marion County Circuit Court's order continued, "The firearm Ball pleaded guilty to

possessing in Marion County was a Marlin 917V5 rifle, bearing serial number 92636879,

which was not the same firearm he pleaded guilty to possessing in Claiborne County."  Yet

---

[2] In his PCR motion, Ball alleged the date in the Claiborne County indictment was wrong and should have read July 26, 2018, as well.  Neither the State nor the court directly addressed the claim Ball made regarding the date in the Claiborne County indictment. During the evidentiary hearing, the judge apparently maintained the impression that the possession in Claiborne County occurred after the Marion County incident.

nowhere in that order is there a mention of the specific gun and serial number that Ball was charged with in Claiborne County. I also add that the indictments, which were more accessible to the State and the court, were not read in full and/or placed in the record for our benefit. But for Ball's concession in his appellate brief, we would not have had the clarification necessary for determining if this claim of double jeopardy had merit.

¶35.    The trial court stated in the written order denying Ball's PCR claim, "When he traveled to Claiborne County, he was still a felon and still in possession of a firearm; he was therefore guilty of committing the same crime but in a new jurisdiction." The court continued, "The issue in Ball's case is not whether he received the weapons at different times or from different sources, but whether he illegally possessed one firearm in Marion County, and later illegally possessed another firearm when he was stopped and arrested in Claiborne County." This last point is only half true. The initial possession of the firearms *was* an issue—one of fact. *See Knight*, 192 So. 3d at 367 (¶23). Whether he received the weapons at the same time was a factual question the circuit court did not outwardly resolve at the hearing to determine if Ball's continuing possession constituted the same offense.

¶36.    Nonetheless, I am aware that when reviewing findings of fact in PCR orders, our standard of review prevents us from reversing those findings unless they are clearly erroneous. *Tingle v. State*, 285 So. 3d 708, 710 (¶8) (Miss. Ct. App. 2019). The trial court's order stated that the court had reviewed the parties' filings, both indictments, guilty pleas, and sentencing orders and concluded Ball was not subjected to double jeopardy. Based on this statement and Ball's concessions, I would concur that the trial court did not make a clear

14

error of fact. Although I would affirm the denial of relief, I would reproach the State's use of mere examples instead of actual facts at the hearing to reject a claim of double jeopardy like the one presented. Ball presented a non-frivolous claim for double jeopardy, *see United States v. Jones*, 733 F.3d 574, 580 (5th Cir. 2013), and absent his concessions and sworn pleas, in addition to the trial court's acknowledgment of its review of each indictment, this matter would have faced a different result. For this reason, I specially concur.

**BARNES, C.J., AND McDONALD, J., JOIN THIS OPINION.**